Gordon GRANT, Plaintiff,

v.

The CITY OF NEW YORK, James McGowan (Shield No. 37132), John Dicarlantonio (Shield No. 11556) and "Jane Doe" (intended to be agents or employees of The City of New York involved in the arrest, continued detainment and imprisonment of plaintiff Gordon Grant on June 29, 1990) and Pia Johanson, Defendants.

No. 91 CIV. 4266 (RLC).

United States District Court, S.D. New York.

April 1, 1994.

---

Reardon & Sclafani, P.C. (Michael V. Sclafani, of counsel), Yonkers, NY, for plaintiff.

Paul Crotty, Corp. Counsel of the City of New York (Gabriel Taussig, Robin Binder, Janet Gallagher, of counsel), New York City, for defendants.

## *OPINION*

ROBERT L. CARTER, District Judge.

Plaintiff Gordon Grant originally brought this action against municipal defendants [1] the City of New York, and Police Officers James McGowan and John DiCarlantonio alleging false arrest and false imprisonment in violation of 42 U.S.C. § 1983. Defendants now move for summary judgment under Rule 56, F.R.Civ.P., dismissing these claims, or in the alternative summary judgment based on the doctrine of qualified immunity.

### I.

According to the deposition testimony of defendant McGowan, in the early morning of

---

1. Plaintiff's claims against Pia Johanson are not at issue here.

June 29, 1990, defendants McGowan and Di-Carlantonio of the 10th Precinct of the New York City Police Department were summoned to the premises of 233 West 26th Street to investigate the report of a burglary in progress. When defendants McGowan and DiCarlantonio arrived at the premises they first encountered plaintiff standing outside the building. After briefly talking with plaintiff, defendants McGowan and DiCarlantonio entered the building and proceeded to the apartment of Pia Johanson ("Johanson") who then led them inside. Upon entering the apartment, Johanson requested that defendant McGowan go with her to another part of the apartment to speak in confidence away from her companion, Winston Grant, who was also present. Defendant McGowan noted that Johanson was crying, had alcohol on her breath and had a disheveled appearance. Defendant McGowan then went with her to another room where Johanson informed him that she had been raped and named plaintiff as one of her attackers.[2] During his conversation with Johanson, McGowan eventually determined that no burglary had occurred, and no further investigation of the premises was undertaken.

The complainant Johanson, on the other hand, gave a different account of the events leading up to her accusation. At her deposition, Johanson testified that she accompanied the police to her apartment from the 10th precinct where she had personally registered a complaint of theft with the desk sergeant. She did not advise the desk sergeant that she had been raped. Johanson also testified that she was then brought back to her apartment in a patrol car by two police officers whom she could not identify. The police officers accompanied Johanson up to her apartment where they were met by Winston Grant. Winston Grant advised the police officers that there was nothing to be concerned about because he and Johanson were having a domestic dispute. When one of the police officers suggested they work things out themselves, Johanson told them that she had been raped by plaintiff. At no time did the officers conduct an investigation inside her apartment.

In any event, defendant McGowan testified that after his discussion with Johanson he went down to the lobby where he conferred with his supervisor Sergeant Yaverbaum about Johanson's allegation. Yaverbaum did not enter the apartment to investigate the alleged crime scene. Sergeant Yaverbaum subsequently interviewed Johanson "for a minute" who told him that she had been raped by plaintiff. Yaverbaum did not notice anything particularly unusual about Johanson's demeanor, but did notice that a button was missing from her blouse. Another police officer, Eileen Doherty, also interviewed Johanson, and was also told by her that she had been raped. After talking to the officers, Johanson agreed to undergo a Vitullo rape kit test, and was taken by ambulance to Bellevue Hospital. Subsequently, without first interviewing him, Sergeant Yaverbaum authorized plaintiff's arrest for rape.

At 2:26 a.m. plaintiff, who had been waiting outside the building unsupervised, was arrested and removed to the precinct. Prior to being placed under arrest, plaintiff advised defendant McGowan that he was a police officer with the Spokane Police Department and was required to advise his employer of his arrest. When he arrived at the precinct a short time later, he telephoned his employer to discuss with him what had happened. Plaintiff remained at the station until 5:17 a.m., when he was transported to Manhattan Central Booking. He arrived at Central Booking at 5:30 a.m. where he was placed in a separate holding cell as a safety measure until his release at 8:50 p.m.

As arresting officer, defendant McGowan was assigned to Manhattan Criminal Court to process the arrest. He arrived at the Manhattan District Attorney's Office at approximately 8:30 a.m. on June 29, 1990.

Sometime during the afternoon of the 29th, Andrew Heffner, the Assistant District Attorney ("A.D.A.") assigned to review the case, interviewed Johanson by telephone. During the course of their conversation, Johanson retracted her allegations against plaintiff. However, plaintiff suggests that

---

2. Winston Grant was also accused and arrested.

His arrest is not at issue in this lawsuit.

the retraction occurred earlier that morning.[3] By 5:40 p.m. a Declined Prosecution form was typed; but it was not signed by the A.D.A. until later that evening. At 8:50 p.m. defendant McGowan secured the release of plaintiff.

## II.

 Rule 56(c), F.R.Civ.P., provides that summary judgment may be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The party moving for summary judgment must initially demonstrate the absence of a genuine issue of material fact, which can be done by pointing out that the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The substantive law governing the case will identify those facts which are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). To defeat summary judgment, the non-moving party must go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553.

Defendants contend that they are entitled to summary judgment on plaintiff's claims of false arrest and false imprisonment because the facts of the case establish that defendants arrested and detained plaintiff based on the objectively reasonable belief that plaintiff had committed the crime of rape. Plaintiff, on the other hand, argues that summary judgment is not appropriate because there are "major factual contentions" in dispute as to the issue of whether defendants' arrest of plaintiff was reasonable and supported by probable cause.

 A claim of false arrest, whether framed as an unconstitutional deprivation of civil rights or as tortious conduct under New York State law, may be established upon a showing that there was no probable cause to support a plaintiff's arrest and detention. *See Pierson v. Ray*, 386 U.S. 547, 557, 87 S.Ct. 1213, 1219, 18 L.Ed.2d 288 (1967); *Zanghi v. Old Brookville*, 752 F.2d 42, 45 (2d Cir.1985). "[P]robable cause to arrest exists when the authorities have knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Calamia v. New York*, 879 F.2d 1025, 1032 (2d Cir.1989). New York State law dictates that a police officer may not arrest a person without a warrant unless the officer has "reasonable cause" to believe that a crime has been committed and that the person in question has committed that crime. *See* N.Y.Crim.Proc. § 140.10(1)(b) (McKinney 1993). The "reasonable cause" standard for an arrest under New York law is the same as the constitutional "probable cause" standard. *Raysor v. Port Authority of New York and New Jersey*, 768 F.2d 34, 39–40 (2d Cir.1985), *cert. denied*, 475 U.S. 1027, 106 S.Ct. 1227, 89 L.Ed.2d 337 (1986).

 Although plaintiff argues that the reasonableness of his arrest should be determined by a jury, he does not dispute the central material fact in this case that the alleged victim Pia Johanson accused him of raping her,[4] which by itself is sufficient to

---

**3.** Although Johanson's deposition testimony from January 22, 1993 supports the version of her recanting her accusation in the afternoon of the 29th, her affidavit dated July 23, 1992 contradicts her deposition testimony. In that document Johanson stated that "[s]hortly after [her physical examination at Bellevue], I advised the police and the District Attorney that I had no desire to pursue the complaint any further and asked that the whole matter be dropped." (Johanson Aff., Pl.'s Ex. 9 at ¶ 6.)

**4.** Notwithstanding Johanson's deposition testimony in which she stated that plaintiff raped her (Johanson Dep. at 133, Pl.'s Ex. 8) and her affidavit of July 23, 1992 in which she denies ever making such an allegation, (Johanson Aff., Pl.'s Ex. 9 at ¶¶ 4, 8), plaintiff himself concedes in both his complaint, (Def.'s Ex. A at ¶ 12) and an October 17, 1991 affidavit, (Def.'s Ex. B at ¶ 4) that Johanson told the police that he raped her.

establish probable cause for arrest. *See, e.g., Clay v. Conlee,* 815 F.2d 1164, 1168 (8th Cir.1987) (rape victim's identification of man as her assailant sufficient to establish probable cause for arrest absent some indication that information not reliable or trustworthy); *Daniels v. United States,* 393 F.2d 359, 361 (D.C.Cir.1968) (officers have probable cause to arrest if they receive "information from some person—normally the putative victim or eye witness—who it seems reasonable to believe is telling the truth"); *(People v. Cruz,* 173 A.D.2d 275, 569 N.Y.S.2d 666, 667 (1st Dep't), *appeal denied,* 78 N.Y.2d 964, 574 N.Y.S.2d 944, 580 N.E.2d 416 (1991) (identification of a perpetrator by a victim suffices to establish probable cause to arrest); *People v. Crespo,* 70 A.D.2d 661, 661, 417 N.Y.S.2d 19, 20 (2d Dep't 1979) (eyewitness-victim of a crime can provide probable cause for the arrest of his assailant despite the fact that his reliability has not been previously established or his information corroborated).

Moreover, although plaintiff argues that defendants' failure to thoroughly investigate the premises and question all parties involved suggests that their arrest of him was unreasonable, the police had no obligation to further investigate her claim at the time of the arrest once they had a reasonable belief that probable cause to arrest existed.[5] *See Krause v. Bennett,* 887 F.2d 362, 371 (2d Cir.1989). Indeed, Johanson's allegations were supported by the disheveled appearance of her clothing (Doherty Dep., Def.'s Ex. F at 39) and her agreeing to be taken to the hospital to submit to a Vitullo kit rape test. (Yaverbaum Dep., Def.'s Ex. E at 77.) Although Johanson's initial claim of burglary might cast some doubt as to the veracity of her later rape claim, seen as a whole, the circumstances of that night gave defendants probable cause to arrest plaintiff, and therefore defendants' motion for summary judgment on the false arrest claim must be granted.

■ In addition, plaintiff's detention until after 8:00 that evening does not give rise to a claim for false imprisonment. Since a claim for false imprisonment is premised on a lack of probable cause for the arrest, *see Cameron v. Fogarty,* 806 F.2d 380, 387 (2d Cir. 1986), *cert. denied,* 481 U.S. 1016, 107 S.Ct. 1894, 95 L.Ed.2d 501 (1987), that basis for such a claim is absent here. Moreover, though plaintiff was detained for approximately fifteen hours before his release, there was no unreasonable delay in plaintiff's release that can be attributed to defendants.

Plaintiff claims that Johanson retracted her complaint against him at about 9:30 a.m. during a phone conversation with an A.D.A. However, Johanson admits in her deposition testimony that there was more than one telephone call with the District Attorney's office, and in that it had been in her last conversation in the afternoon that she had said "that they should let Gordon go." (Johanson Dep., Def.'s Ex. C at 147, 153–154.) Indeed, the affidavit of Paul Shechtman ("Shechtman Aff."), Counsel to the Manhattan District Attorney, and the attached documents indicate that a final decision was not made on the case until late afternoon, after the A.D.A. had spoken with Johanson. (Shechtman Aff. at ¶ 6.) Thereafter, a Declined Prosecution form was typed at 5:40 p.m. and signed by the supervising A.D.A. some time later. (Shechtman Aff. at ¶¶ 8, 12.) While no notation was made of the time the supervising A.D.A. reviewed and signed the Declined Prosecution form, that process could take as much as two or three hours on a busy day, and is best ascertained by determining the arresting officer's, i.e. defendant McGowan's, punch-out time, which in this case was 8:22 p.m. (Shechtman Aff. at ¶¶ 12–13.) By 8:50 p.m. plaintiff had been released.

Regardless of whether Johanson retracted her complaint against plaintiff in the morning or in the afternoon of June 29, 1990, the fact remains that plaintiff was released prior to being arraigned, and before the 24 hour limit for arraignment or release required under New York. *See People ex rel. Maxian v. Brown,* 77 N.Y.2d 422, 427, 568 N.Y.S.2d 575,

5. Plaintiff also asserts that defendants had cause to doubt Johanson's story because she had been drinking heavily that night. However the deposition testimony of the officers indicates that though Johanson was upset, she was not incoherent or drunk. (Doherty Dep., Def.'s Ex. F at 39–40; Yaverbaum Dep., Def.'s Ex. E at 62.)

577, 570 N.E.2d 223 (1991) (delay of more than 24 hours in bringing person arrested without a warrant to arraignment is presumptively unreasonable). The time of the release suggests that the delay was not unreasonable because it was within the 24 hour limit. Moreover, although plaintiff cites to a New York law[6] to support his contention that defendant McGowan was mandated to immediately release plaintiff from custody upon learning that Johanson had recanted her accusation, he can point to no relevant case law to support his claim that the release was not immediate and thus unreasonable.[7] Indeed, a careful reading of the statute in question indicates that though a police officer must immediately release a person after he learns that there is no basis for prosecution, the immediacy of the release refers to the officer's obligation to release the arrestee rather than wait and continue with the processing of the arrest through arraignment, which did not occur here. Moreover, since a detainee cannot be released without the consent of the District Attorney's Office, which in this case was obtained at the time the A.D.A. signed the Declined Prosecution Form, defendant McGowan's release of plaintiff a short time afterwards was "immediate," thereby destroying any claim of unreasonable delay in his release to support the false imprisonment charge. Accordingly, defendants' motion for summary judgment on the false imprisonment claim is also granted.

### III.

Defendants' motion for summary judgment pursuant to Rule 56(c), F.R.Civ.P., on the false arrest and false imprisonment claims is granted. Because the false arrest claim has

**6.** New York Crim.Proc. § 140.20(4) provides the following:

· If after arresting a person, for any offense, a police officer upon further investigation or inquiry determines or is satisfied that there is not reasonable cause to believe that the arrested person committed such offense or any other offense based upon the conduct in question, he need not follow any of the procedures prescribed in subdivisions one, two and three, but must immediately release such prisoner from custody.

**7.** Although plaintiff cites case law to support his contention that defendants' continued detention

been disposed of, the court need not consider the issue of qualified immunity.

**IT IS SO ORDERED.**

of plaintiff was unconstitutional because they knew they had no reasonable basis to detain plaintiff for the crime of rape, his reliance on the cases cited, *Sanders v. English*, 950 F.2d 1152 (5th Cir.1992); *Goodwin v. Metts*, 885 F.2d 157 (4th Cir.1989), *cert. denied, Maxwell v. Goodwin*, 494 U.S. 1081, 110 S.Ct. 1812, 108 L.Ed.2d 942 (1990), and *Jones v. Chicago*, 856 F.2d 985 (7th Cir.1988), is misplaced. These cases dealt with claims that the police officers deliberately falsified evidence or withheld exculpatory evidence from prosecutors, a charge that is not present in this case.