Frances **HOWARD** and Sameerah Joyner, a Minor, by Frances Howard, Her Guardian, Plaintiffs,

v.

Detective Bert **SCHOBERLE**; John and Jane Doe Police Officers # 's 1–15; the New York City Police Department; the City of New York; Special Agent Pauline Wight, Defendants.

No. 93 Civ. 0508 (SAS).

United States District Court, S.D. New York.

Oct. 5, 1995.

---

Martha Rayner, Mitchell Kamin, Neighborhood Defender Service of Harlem, New York City, for plaintiffs Frances Howard and Sameerah Joyner.

Albert Fredericks, Marlene Mazel, Assistant Corporation Counsel, Office of Corporation Counsel, City of New York Department of Law, New York City, for defendants Detective Bert Schoberle; John and Jane Doe Police Officers #'s 1–15; New York City Police Department and City of New York.

Serene K. Nakano, Assistant United States Attorney, United States Attorney's Office, New York City, for defendant Special Agent Pauline Wight.

## OPINION AND ORDER

SCHEINDLIN, District Judge.

On May 20, 1992, New York City police officers and a federal agent from the Bureau of Alcohol, Tobacco and Firearms ("BATF") forcibly entered and searched a Manhattan apartment. Plaintiffs Frances Howard and her thirteen year-old daughter Sameerah Joyner resided in the apartment and were on the premises when the search was executed. Plaintiffs contend that the search violated their civil and constitutional rights and seek compensatory and punitive damages. Defendants include fourteen New York City police officers, one BATF agent, the New York City Police Department ("NYPD"), and the City of New York ("City").

Plaintiffs' Complaint contains six claims for relief and is brought under 42 U.S.C. § 1983, the Fourth and Fourteenth Amendments to the United States Constitution, and state law. Plaintiffs first allege that they were arrested without probable cause in violation of their Fourth and Fourteenth Amendment rights. Second, plaintiffs contend that their Fourth Amendment rights were violated when they were strip searched without their consent. Third, plaintiffs claim that the search of their apartment was carried out in an unreasonably destructive manner in violation of the Fourth Amendment. Count Four of the Complaint alleges that the City and the NYPD are liable for the unconstitutional actions of its officers because those actions were the result of municipal and police department policies. Counts Five and Six allege, respectively, the state law torts of false arrest and imprisonment and malicious prosecution. Finally, Count Seven seeks to hold the City and the NYPD liable for the negligent hiring, training and supervision of the defendant officers.

The City Defendants now move for summary judgment on plaintiffs' first, second, fifth and sixth claims. The BATF agent moves for summary judgment on all claims against her. For the reasons set forth below, both motions are granted in part and denied in part.[1]

## I. BACKGROUND

Certain facts are not disputed. In May, 1992, Detective Bert Schoberle ("Det. Schoberle") received information from a confidential informant that several individuals were packaging and storing cocaine at an apartment located on 129th street in Manhattan. See Affidavit of Bert Schoberle, dated January 9, 1995 ("Schoberle Aff."), at ¶ 4. The informant also stated that he had observed

---

1. At oral argument, Plaintiffs consented to a dismissal of Count Five (false arrest and imprisonment) against the federal Defendant and to a dismissal of Count Six (malicious prosecution) against both the City Defendants and federal Defendant. See Transcript of Hearing, March 1, 1995, at pp. 15, 25.

large amounts of cash and a handgun in the apartment. *Id.* Based on this information, Det. Schoberle obtained a warrant to search the apartment. *See* City Defendants' Rule 3(g) Statement ("City Rule 3(g)"), at ¶ 5. The warrant authorized the NYPD to enter the apartment without prior notice and to search for narcotics, narcotics paraphernalia and weapons. *See* Exhibit A to City Rule 3(g), dated May 14, 1992. In addition, the warrant named four males who "utilized" the apartment and authorized the police to search them as well. *Id.*

On May 20, 1992, a team of NYPD officers, supervised by Lieutenant Omar Mendez and Sergeant Joseph Felder, assembled in order to execute the search warrant. *See* Schoberle Aff. at ¶ 6. Det. Schoberle was part of the team and was designated to conduct the actual search. *Id.* Because it was anticipated that firearms would be present at the apartment, the team also included Pauline Wight, a special agent with the BATF ("S/A Wight"). BATF agents occasionally accompany NYPD officers on warrant executions as part of Project Achilles, a federal program aimed at identifying and prosecuting those individuals involved in drug trafficking and violent criminal activities while carrying or using firearms. *See* Affidavit of Richard Curd, BATF Agent, dated November 7, 1994, at ¶ 4.

#### A. *Entry Into the Apartment*

The team then travelled to the apartment to execute the warrant. As the warrant authorized "no knock" entry, the team, led by Det. Schoberle and several other officers, forcibly entered the apartment by using a hydraulic device to spread the doorframe and disengage the lock. *See* Schoberle Aff. at ¶ 7. Four people were on the premises when the officers entered the apartment: i) Plaintiff Frances Howard ("Howard"), who identified herself as a resident of the apartment; ii) Dennis Joyner ("Joyner"), Howard's nineteen year-old son who also acknowledged that he was a resident of the apartment; iii) Plaintiff Sameerah Joyner ("Sameerah"), Howard's daughter, who gave her age as thirteen and stated that she lived in the apartment; and iv) Kalima Shabizz, a visiting school friend of Sameerah Joyner who gave her age as twelve. *Id.* At gunpoint, the officers placed the four occupants on the living room floor and handcuffed them. *See* Deposition of Frances Howard, ("Howard Dep."), at pp. 54, 57; Affidavit of Dennis Joyner, dated January 26, 1995, at ¶ 3; Deposition of Sameerah Joyner ("S. Joyner Dep."), at pp. 35–37. The search warrant did not identify any of these four individuals.

Much of the disagreement in this case centers over what happened during the time that Plaintiffs were being detained. Both parties agree that Det. Schoberle conducted an initial sweep of the entire apartment, consisting of a living room, kitchen and several small bedrooms adjacent to a narrow hallway. *See* City Rule 3(g) at ¶ 10; Schoberle Aff. at ¶ 8. There is also no dispute that Det. Schoberle broke down the locked door of one of the apartment's bedrooms during this search, or that this bedroom belonged to a border who had rented the room from Howard. *See* Howard Dep. at pp. 22–25, 55–56. However, the parties disagree over what Det. Schoberle found in the bedroom. Det. Schoberle claims that he observed a number of empty plastic vials dispersed around the room and a clear plastic bag containing a white substance under the bed; Plaintiffs claim that Det. Schoberle did not observe any contraband during this initial search. *See* Schoberle Aff. at ¶ 8; Deposition of Lieutenant Omar Mendez ("Mendez Dep."), at p. 86; Plaintiffs' Counter Rule 3(g) Statement to City Defendants' Motion for Summary Judgment ("Plaintiffs' (City) Counter–Rule 3(g)"), at ¶ 11. After Det. Schoberle's initial sweep of the apartment, both parties agree that Howard and Joyner were placed under arrest. *See* Schoberle Aff. at ¶ 12; Plaintiffs' (City) Counter–Rule 3(g) at ¶ 12.

#### B. *S/A Wight's Involvement*

S/A Wight entered the apartment with the search team and helped secure the premises, although she then apparently remained in an outer hallway while the NYPD officers continued the raid. *See* Mendez Dep. at p. 143; Wight Dep. at p. 64. After Howard and Joyner were arrested, one of the NYPD officers asked S/A Wight, who was the only

female officer on the search team, to search the females in the apartment. *See* Wight Dep. at p. 64. Although Wight stated that she was not given any direction as to how to conduct the searches, Plaintiffs imply that an NYPD officer told Wight to strip search the women. *See* Plaintiffs' Rule 3(g) Statement in Opposition to Defendant Wight's Motion for Summary Judgment ("Plaintiffs' (Wight) Counter–Rule 3(g)"), at ¶ 10.

S/A Wight then strip searched the Plaintiffs separately behind the closed doors of one of the bedrooms. *See* Wight Dep. at 64; Howard Dep. at p. 60. Only S/A Wight and the Plaintiff being searched were present during each search. *Id.* S/A Wight first took Howard into the bedroom and had her remove her clothing, which S/A Wight inspected for weapons and contraband. *See* Howard Dep. at pp. 168–72. She then made a visual inspection of Howard, with the only physical contact being a touch on the hair to ensure that weapons or contraband were not concealed there. *Id.* S/A Wight then repeated this process with Sameerah and her friend Kalima Shabizz. *See* S. Joyner Dep. at pp. 40–43; Wight Dep. at pp. 64–65. Nothing was recovered from these searches.

### C. *Search of the Apartment*

After the strip searches were completed, all four individuals were removed to the 32nd Precinct Station House. Sameerah was detained at the station house, handcuffed to a bench, for between two and three hours and was then released to the custody of her grandmother. *See* S. Joyner Dep. at pp. 47–50. Howard was held in police custody until the following day, when she was arraigned and then released. *See* Howard Dep. at pp. 72–83.

After the Plaintiffs were removed from the apartment, Det. Schoberle undertook a more thorough search of the premises. In the bedroom where he claims to have initially observed the empty plastic vials and plastic bag with a white substance, both parties agree that Det. Schoberle found 102 vials filled with cocaine and $2,102.00 in cash. *See* Schoberle Aff. at ¶ 10; Plaintiffs' (City) Counter–Rule 3(g) at ¶ 17. In the living room, under a couch, Det. Schoberle found a plastic bag containing 100 vials of cocaine and another plastic bag containing marijuana. *See* Schoberle Aff. at ¶ 10; Plaintiffs' (City) Counter–Rule 3(g) at ¶ 18. Although Plaintiffs were not present during this search, they contend that furniture, clothing and property were unnecessarily damaged or destroyed. *See* Howard Dep. at pp. 87, 92. Specifically, all doors were removed from their hinges, clothing was slashed or ripped apart and mattresses and couches were slashed. *Id.*

S/A Wight was present at the raid-site during at least some of the time that the NYPD searched Howard's apartment, although she apparently remained in an outer hallway and did not participate in the search. *See* Wight Dep. at p. 74; Mendez Dep. at pp. 143–44. After no firearms were recovered, S/A Wight left the premises because there was no longer any basis for federal prosecution. *Id.*

On June 2, 1992, a Grand Jury returned an indictment charging Howard and Joyner with two counts of criminal possession of a controlled substance in the third degree, unlawful possession of marijuana, and criminally using drug paraphernalia in the second degree. *See* Exhibit E to City Defendants' Notice of Motion. The indictment against Howard was subsequently dismissed because she was not afforded an opportunity to appear and testify before the Grand Jury as required by § 190.50 of the New York Criminal Procedure Law. Sameerah was never charged with any offense.

## II. DISCUSSION

A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact and that the undisputed facts warrant judgment for the moving party as a matter of law. *See* Fed.R.Civ.P. 56(c); *see generally Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The burden of showing that no factual dispute rests on the party seeking summary judgment. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). In assessing the record to determine whether there is a genuine

issue of material fact, the court must resolve all ambiguities and draw all factual inferences in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986); *Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 57 (2d Cir. 1987). Thus, in determining whether a genuine issue has been raised, the inferences to be drawn from the underlying facts revealed in the affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion. *See, e.g., United States v. Diebold*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 465 (2d Cir.1989).

On summary judgment, a court "cannot try issues of fact; it can only determine whether there are issues to be tried." *Donahue*, 834 F.2d at 58 (quoting *Heyman v. Commerce & Industry Ins. Co.*, 524 F.2d 1317, 1319–20 (2d Cir.1975)); *see also Gallo v. Prudential Residential Services*, 22 F.3d 1219, 1224 (2d Cir. 1994) (a court's duty at the summary judgment stage "is confined . . . to issue-finding; it does not extend to issue-resolution"). If there is any evidence in the record from which a reasonable inference could be drawn in favor of the non-moving party on a material issue of fact, summary judgment is improper. *See Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 37 (2d Cir.1994). With these familiar maxims in mind, I turn to defendants' motions.

## A. THE CITY DEFENDANTS' MOTION

### 1. Counts One and Five: The Arrests

Count One of the Complaint alleges that the Plaintiffs were arrested without probable cause in violation of the Fourth Amendment. Count Five of the Complaint alleges that

Plaintiffs were falsely arrested in violation of state law.

 A claim for false arrest under the Fourth Amendment may be established upon a showing that there was no probable cause to support a plaintiff's warrantless arrest and detention. *See Pierson v. Ray*, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). Probable cause to arrest exists when the facts and circumstances are sufficient to warrant a prudent person to believe that the arrestee has committed an offense. *See Gerstein v. Pugh*, 420 U.S. 103, 111, 95 S.Ct. 854, 861, 43 L.Ed.2d 54 (1975); *Calamia v. New York*, 879 F.2d 1025, 1032 (2d Cir.1989). Similarly, a warrantless arrest is illegal under New York law if the police do not have "reasonable cause" to believe that the arrestee has committed a crime. *See* N.Y.Crim.Proc. § 140.10(1)(b) (McKinney 1992). "Reasonable cause" is equivalent to the constitutional "probable cause" standard. *See Raysor v. Port Authority of New York and New Jersey*, 768 F.2d 34, 39–40 (2d Cir.1985), *cert. denied*, 475 U.S. 1027, 106 S.Ct. 1227, 89 L.Ed.2d 337 (1986); *Grant v. City of New York*, 848 F.Supp. 1131, 1134 (S.D.N.Y.1994).

 Initially, I note that the decision to handcuff Plaintiffs after the police entered the apartment was undeniably lawful. *See Michigan v. Summers*, 452 U.S. 692, 705, 101 S.Ct. 2587, 2595, 69 L.Ed.2d 340 (1981) ("[A] warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted.") (footnote omitted). As Plaintiffs do not dispute the validity of the search warrant, their initial detainment was lawful under *Summers*. However, at some point the initial *Summers* detention became a full scale arrest that was no longer incidental to the execution of a valid search warrant.[2] For purposes of this motion, it appears that both

---

**2.** Defendants argue that *Summers* justified the detention of Plaintiffs throughout the entire period of the search. While this may be true, Plaintiffs were not simply detained during the search. After Det. Schoberle's initial sweep through the apartment, Howard and Dennis Joyner were placed under arrest, and the Plaintiffs were then strip searched before being transported to the police station. Moreover, the search team only

undertook a more thorough inspection of the premises after Plaintiffs were removed. This treatment is outside the scope of a valid *Summers* detention, which gives the police a more "limited" authority to detain the occupants of the premises when executing a search warrant. *See id.* at p. 705 and n. 21, 101 S.Ct. at p. 2595 and n. 21.

parties agree that Howard was arrested after Det. Schoberle searched the apartment on his initial sweep but before Plaintiffs were strip searched and removed from the apartment. *See* City Rule 3(g) at ¶¶ 10–13; Plaintiffs' (City) Counter–Rule 3(g) at ¶¶ 10–13. It is the validity of this arrest that is challenged in Counts One and Five of the Complaint.[3]

■ The City Defendants claim that Plaintiffs' arrests were clearly supported by probable cause: as Det. Schoberle recovered empty plastic vials that he recognized as the type commonly used to package "crack" cocaine and a clear plastic bag containing a white substance that appeared to him to be cocaine, probable cause existed to arrest anyone found to be in possession of that material. Both Det. Schoberle and Lt. Mendez submitted affidavits indicating that drugs were recovered from an apartment bedroom before Howard and Joyner were placed under arrest. *See* Schoberle Aff. at ¶ 8; Mendez Dep. at pp. 86, 95. There is no question that probable cause exists to arrest a person found to be in possession of what appears to be narcotics. *See United States v. Rosario*, 638 F.2d 460, 462 (2d Cir.1980), *cert. denied*, 450 U.S. 1000, 101 S.Ct. 1707, 68 L.Ed.2d 202 (1981); *United States v. Vasquez*, 638 F.2d 507, 525 (2d Cir.1980), *cert. denied*, 454 U.S. 847, 102 S.Ct. 165, 70 L.Ed.2d 135 (1981); *People v. Guine*, 173 A.D.2d 849, 570 N.Y.S.2d 664, 665 (2d Dep't 1991); *People v. Randolph*, 157 A.D.2d 866, 550 N.Y.S.2d 741, 742 (2d Dep't), *appeal denied*, 75 N.Y.2d 923, 555 N.Y.S.2d 41, 554 N.E.2d 78 (1990).

In response, Plaintiffs claim that Det. Schoberle did not find narcotics or narcotics paraphernalia on his initial security sweep through the apartment, but only recovered that contraband after the Plaintiffs had been arrested, strip searched and transported to the police station. Plaintiffs' argument is obviously not based on personal knowledge, because Plaintiffs were in the process of being handcuffed and placed face down on the living room floor when Det. Schoberle conducted his initial search of the apartment. However, Plaintiffs rely on Det. Schoberle's testimony during a 1992 trial of a related eviction action against Howard in which Plaintiffs allege that Det. Schoberle testified that he did not observe contraband in his initial sweep of the apartment. Specifically, Plaintiffs cite to the following excerpt from Det. Schoberle's testimony:

Q [by Det. Schoberle's counsel]: Describe to the Court how you executed this warrant?

A: Briefly in substance, with a hydraulic ram. We broke the door open and the field team rushed in. **I observed two people in my close view and immediately placed them under arrest.** And, the two juveniles were also restrained and handcuffed and placed on the floor. Doing a quick sweep of the apartment, there were no other people inside of the apartment. And, the apartment was cleared. At that time, I found out the names of the defendants … They [Frances Howard and Dennis Joyner] were searched. Items on their person were placed in an envelope with their name, date of birth, the address

---

**3.** The City Defendants contend that Sameerah was never technically arrested. There is no requirement under either the Fourth Amendment or New York law, however, that an arrest be in any sense formal. *See Posr v. Doherty*, 944 F.2d 91, 96 (2d Cir.1991). A person is seized or arrested within the meaning of the Fourth Amendment " 'only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.' " *Id.* at 97 (quoting *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980)). Similarly, an arrest occurs under New York law if a person is detained against his will and without his consent under some real or assumed authority. *Id.* at 97 (quoting *Jacques v. Sears, Roebuck & Co.*, 30 N.Y.2d 466, 472, 334 N.Y.S.2d 632, 285 N.E.2d

871 (1972)). In the present case, it is ludicrous for Defendants to assert that Sameerah would have felt that she could simply leave the apartment or the police station: Sameerah and her mother were handcuffed throughout the entire time that she was in the apartment, and when she was subsequently moved—apparently still handcuffed—to the police station, she remained locked to a bench for between two and three hours. *See* Dep. of S. Joyner at pp. 47–49. In addition, the fact that it may have been improper to leave Sameerah, a minor, at the apartment after the raid does not justify her treatment as an arrestee. Thus, Sameerah was arrested within the meaning of the Fourth Amendment and New York law. The arrest occurred at the time that her mother was placed under arrest.

where they lived, pedigree information, height, weight, clothing that they were wearing. And, they were removed to 32 Precinct by other members of the field team. And, a search of the apartment was conducted ...

\* \* \* \* \* \*

[After asking about the initial entry, Howard's counsel cross-examined Det. Schoberle about the detention of the Plaintiffs and initial sweep of the apartment]

Q [by Howard's counsel]: And you arrested them immediately, correct?

A: Yes, everybody was placed in handcuffs.

Q: And, taken to the living room?

A: Everybody. Everybody was in the living room and placed on the floor.

Q: And, handcuffed behind their backs?

A: Yes.

Q: You swept through the apartment to make sure there was no one else there?

A: Yes.

Q: You checked every room?

A: Yes.

Q: And, you checked every closet?

A: Yes.

Q: And **at that point** you placed everybody in handcuffs and swept through the apartment?

A: Yes

Q: And, you did not see any contraband **at that point?**

A: No.

Q: There was no contraband lying out in what you call plain view; is that correct?

A: Not as far as **that moment.** I did not recall any because we were not looking for contraband **at that moment.**

Q: So, you do not remember seeing any **at that point?**

A: No.

*City of New York v. Frances Howard,* No. L & T 24293–92 (N.Y.Civ.Ct. Dec. 4, 1992) (testimony of Det. Schoberle, Dec. 1, 1992) (emphasis added).

This testimony is sufficient to create a fact issue over whether Det. Schoberle observed any contraband on his initial sweep through the apartment. First, Det. Schoberle's testified on direct examination that Howard and her son were immediately arrested, searched and removed from the apartment. However, Det. Schoberle did not state that contraband was found during that time. Moreover, Det. Schoberle's testimony on cross-examination is unclear over what, if anything, he found on his initial security sweep. After Howard's counsel asked him about the initial handcuffing and sweep of the apartment, Det. Schoberle stated that he did not see any contraband in plain view "at that point" because the search team was not looking for contraband "at that moment." Based on this testimony, a trier of fact could reasonably find that no contraband had been recovered before Plaintiffs were arrested, strip searched and removed from the apartment.

If Det. Schoberle did not find contraband on his initial sweep, there was no probable cause to arrest the Plaintiffs, who were not named in the search warrant and who did not possess any contraband on their persons. Of course, it is undisputed that contraband was eventually recovered from the bedroom rented to the boarder and from the living room of the apartment after Plaintiffs were removed and a fuller search was conducted. Plaintiffs admit that probable cause would then have existed to arrest them. *See* Plaintiffs' Memorandum of Law in Opposition to City Defendants' Motion at p. 11. While Plaintiffs' arrests may only have been premature, this relates to the issue of damages, not to their cause of action for unlawful arrest. In this vein, I note that nominal damages are available under § 1983 for a deprivation of constitutional rights. *See Gibeau v. Nellis,* 18 F.3d 107, 110 (2d Cir.1994) (citations omitted). Accordingly, the City Defendants' motion for summary judgment on Counts One and Five of the Complaint is denied.[4] I need

---

**4.** *Cameron v. Fogarty,* 806 F.2d 380 (2d Cir. 1986), *cert. denied,* 481 U.S. 1016, 107 S.Ct. 1894, 95 L.Ed.2d 501 (1987), is not to the contrary. In *Cameron,* the court held that a person who has been convicted of the crime for which he was arrested is barred from recovering on a false arrest claim because the fact of conviction conclusively establishes probable cause to arrest.

not reach Plaintiffs' second contention that, even if Det. Schoberle did recover narcotics or narcotics paraphernalia on his initial sweep, Plaintiffs were not in constructive possession of that material which was found in a locked bedroom rented to a boarder.

### 2. Count Two: The Strip Searches

■ The City Defendants contend that they are entitled to summary judgment on Count Two of the Complaint because i) the strip searches were conducted by S/A Wight in her capacity as a federal law enforcement agent and ii) the strip searches were in any event reasonable. Section 1983 imposes liability for "conduct which 'subjects, or causes to be subjected' the complainant to a deprivation of a right secured by the Constitution and laws." *Williams v. Smith,* 781 F.2d 319, 323 (2d Cir.1986) (quoting *Rizzo v. Goode,* 423 U.S. 362, 370–71, 96 S.Ct. 598, 604, 46 L.Ed.2d 561 (1976)). Thus, a prerequisite to § 1983 liability is the personal involvement of the defendant in the alleged constitutional deprivations. *See Williams,* 781 F.2d at 323.

Assuming for the moment that the strip searches were unreasonable and hence unconstitutional, there are sufficient facts in the record from which a trier of fact could find that the City Defendants personally participated in the strip searches. First, the entire raid was at the direction of the NYPD. S/A Wight accompanied the search team to the apartment and testified that as a courtesy, she would take directions from Lt. Mendez, the officer in charge of the team. *See* Wight Dep. at p. 59. Indeed, a NYPD officer asked S/A Wight to search the women. Although there is some dispute over whether S/A Wight was told to conduct strip searches, a trier of fact could find that the City Defendants were at the very least aware that she was strip searching the Plaintiffs: while Howard, Sameerah, and Kalima Shabizz were searched individually behind the closed door of a bedroom, they were led to and from the living room to the bedroom by an NYPD officer. Moreover, Lt. Mendez testified that, although he did not remember what occurred during the search, either he or Sgt. Felder would have authorized a strip search at the apartment and that a strip search could not have occurred without his knowledge that it was occurring. *See* Mendez Dep. at pp. 81–82. These facts are certainly sufficient to find that the City Defendants personally participated in the alleged § 1983 violation.

■ It is unclear at the summary judgment stage if the strip searches were reasonable. The reasonableness under the Fourth and Fourteenth Amendments of conducting a search depends upon all of the circumstances surrounding the search and the nature of the search itself. *See United States v. Hernandez,* 473 U.S. 531, 537, 105 S.Ct. 3304, 3308, 87 L.Ed.2d 381 (1985); *Covino v. Patrissi,* 967 F.2d 73, 77 (2d Cir.1992) (quotation omitted) (search is reasonable if the need for the particular search outweighs the invasion of personal rights that the search entails). While strip searches have been upheld as reasonable, *see, e.g. Elk v. Townson,* 839 F.Supp. 1047, 1052 (S.D.N.Y.1993); *Burns v. Loranger,* 907 F.2d 233, 236–38 (1st Cir. 1990), the obvious intrusiveness of such a search must be justified by some particularized suspicion that the person searched has committed a crime and may possess weapons or contraband. *See, e.g., Elk,* 839 F.Supp. at 1052 (strip search of arrestee justified where arrestee had been present in a vehicle which smelled strongly of marijuana). As discussed above, it is unclear if the City Defendants recovered drugs and drug paraphernalia on the initial security sweep of the apartment. If narcotics were not recovered during this initial sweep, it would be unreasonable to immediately suspect that the occupants of the apartment—none of whom were identified in the warrant—might be in possession of either narcotics or weapons. Cer-

---

In the present case, Plaintiffs were not convicted. Although Howard was indicted by a grand jury for the conduct which formed the basis for her arrest, an indictment, in the absence of any other indicia of probable cause to arrest, does not necessarily preclude a false arrest claim. Indeed, the Second Circuit in *Bernard v. U.S.,* 25 F.3d 98, 102–04 (2d Cir.1994), analyzed the issue of probable cause in the context of a false arrest claim without any reference to the fact that the plaintiff had been subsequently indicted for the crime for which he was arrested. *But see Woodard v. Hardenfelder,* 845 F.Supp. 960, 967 (E.D.N.Y.1994) (holding that a grand jury indictment establishes, at the very least, a presumption of probable cause).

tainly, a strip search of Howard, her twelve year old daughter and her friend would not have been justified at that time. Accordingly, the City Defendants' motion is denied as to Count Two.

### 3. *Qualified Immunity*

 The City Defendants also argue that they are entitled to qualified immunity on Plaintiffs' § 1983 claims. Qualified immunity is an affirmative defense under § 1983 which shields a defendant sued in his individual capacity

> from liability for civil damages insofar as [his] conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known, *Harlow v. Fitzgerald,* 457 U.S. 800, 818 [102 S.Ct. 2727, 2738, 73 L.Ed.2d 396] (1982), or, even where the rights were clearly established, if it was objectively reasonable for the official to believe that his acts did not violate those rights.

*Frank v. Relin,* 1 F.3d 1317, 1328 (2d Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 604, 126 L.Ed.2d 569 (1993) (some citations and internal quotations omitted). The qualified immunity defense applies in the context of both false arrest and strip search claims under § 1983. *See O'Neill v. Town of Babylon,* 986 F.2d 646, 649–50 (2d Cir.1993) (false arrest); *Wachtler v. County of Herkimer,* 35 F.3d 77, 81 (2d Cir.1994) (strip search). In addition, the Second Circuit has elaborated that in the context of a claim for false arrest, an arresting officer is entitled to qualified immunity if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met. *See O'Neill,* 986 F.2d at 649–50.

 In the present case, summary judgment on the City Defendants' qualified immunity defense is inappropriate for the same reasons that summary judgment is inappropriate on the underlying false arrest and strip search claims. If Det. Schoberle did not discover contraband on his initial security sweep through the apartment, the trier of fact could certainly find that a reasonable officer would not believe that probable cause existed to arrest and strip search the Plaintiffs.

### B. *S/A Wight's Motion*[5]

### 1. *The Arrests and Apartment Search*

 S/A Wight contends that she should not be held liable for any constitutional violations arising out of Plaintiffs' arrests and the subsequent apartment search because she did not personally participate in those actions. I agree. Although S/A Wight accompanied the search team, she was not involved to any substantial degree with either Plaintiffs' arrests or the apartment search.

As to the arrests, the evidence presented by the parties indicates that S/A Wight had nothing to do with the decision to arrest Plaintiffs. Although S/A Wight was part of the search team and entered the apartment with the NYPD officers, she apparently remained in an outer hallway after the apartment was secured. Indeed, S/A Wight only returned to the apartment when she was asked to search the Plaintiffs, *after* Plaintiffs had been arrested. *See* Wight Dep. at p. 64 ("I was asked if I could conduct a search on the women in the apartment, and at that time I proceeded to the front of the apartment. Prior to that, I remained in the hallway."). It is also uncontradicted that S/A Wight had no involvement with the detention of Plaintiffs at the police station. S/A

**5.** S/A Wight claims that all § 1983 claims against her should be dismissed because she was acting within the scope of her employment as a BATF agent and thus under color of federal law during the apartment raid. Section 1983 provides a cause of action for deprivations of constitutional rights perpetrated by an individual acting "under color of any statute, ordinance, regulation, custom or usage of any state ..." 42 U.S.C. § 1983; *see also West v. Atkins,* 487 U.S. 42, 48, 108 S.Ct. 2250, 2254–55, 101 L.Ed.2d 40 (1987) (Section 1983 claims require the defendant to have been

acting under color of state law). However, in *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), the Supreme Court held that a cause of action exists for constitutional deprivations committed by an individual acting under color of *federal* law. Because the analysis of Plaintiffs' claims does not depend on the theory under which S/A Wight is sued, I need not reach the issue of whether S/A Wight was acting under color of federal or state law during the apartment search.

Wight's presence on the search team, standing alone, is an insufficient basis on which to find that she personally participated in the allegedly unconstitutional arrests.

Similarly, there is nothing in the record which indicates S/A Wight participated in the apartment search. The only evidence before the Court demonstrates that Det. Schoberle searched the premises and that S/A Wight remained in an outside hallway and left the area after the NYPD failed to recover any weapons. In addition, S/A Wight testified that she did not even observe the search of the apartment from her position in the outside hallway. *See* Wight Dep. at pp. 77–78. As this evidence is uncontradicted, a reasonable trier of fact could not find that S/A Wight participated in the apartment search.[6]

■■■ Plaintiffs' attempt to establish a "failure to intercede" theory against S/A Wight also fails.[7] "A law enforcement officer has an affirmative duty to intercede on behalf of a citizen whose constitutional rights are being violated **in his presence** by other officers." *O'Neill v. Krzeminski*, 839 F.2d 9, 11–12 (2d Cir.1988) (citations omitted) (emphasis added). In addition, the officer must have had a "realistic" opportunity to prevent the constitutional violation and the officer's failure to act must have been a proximate cause of the plaintiff's injury. *Id.* In the present case, S/A Wight was outside of the apartment when Plaintiffs were arrested and when the apartment was searched. Her mere presence at the raid-site cannot be considered a proximate cause of Plaintiffs' injuries without any evidence that she had an opportunity to prevent the City Defendants' actions. Indeed, it would be pure speculation to find that S/A Wight could have second-guessed the NYPD and prevented the alleged constitutional violations.

For the above reasons, S/A Wight's summary judgment motion is granted on the unlawful arrest and unreasonable search claims.

### 2. *The Strip Searches And Qualified Immunity* [8]

S/A Wight contends that she is entitled to summary judgment on Count Two because qualified immunity shields her from liability for the strip searches. S/A Wight argues that it was objectively reasonable for her to believe that the strip searches of the Plaintiffs were lawful because she was accompanying officers executing a search warrant for narcotics and weapons, drugs had been found in common areas of the apartment, and she was informed that Plaintiffs had been placed under arrest. *See* S/A Wight's Memorandum of Law at pp. 27–28.

■■■ This argument is convincing as to Howard. Although for purposes of this summary judgment motion, in which every inference must be drawn in favor of the nonmoving party, I assume that narcotics were not found before Howard was arrested and strip searched, S/A Wight was part of a search team that was looking for narcotics and weapons. Moreover, before asking her to search the Plaintiffs, an NYPD officer informed S/A Wight that Howard and Joyner were under arrest and were to be transported, along with Sameerah, to the police station. In these circumstances, it was objectively reasonable for her to assume that contraband had been found and that probable cause existed both to arrest and strip search Howard, especially as "it is common knowledge that drug users and dealers conceal controlled substances on their persons." *See Burns*, 907 F.2d at 238; *Elk*, 839 F.Supp. at

---

6. I decline to follow the two Fifth Circuit cases cited by Plaintiffs, holding that officers serving as a back-up to a search team who were present during the search could be considered active participants in that activity. *See James v. Sadler*, 909 F.2d 834, 837 (5th Cir.1990); *Melear v. Spears*, 862 F.2d 1177, 1186 (5th Cir.1989). However, there is no Second Circuit authority following these decisions. In *James*, moreover, the court noted that contrary authority existed. *See id.* at 837.

7. Plaintiffs did not plead a "failure to intercede" theory in their Complaint. Because I find that they cannot maintain this claim, I do not consider whether Plaintiffs' failure to plead that theory should bar them from raising it in opposition to S/A Wight's motion.

8. There is no distinction for purposes of immunity law between suits brought under § 1983 or under *Bivens*. *See Harlow v. Fitzgerald*, 457 U.S. 800, 817, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).

1052. Even if S/A Wight was not specifically informed that contraband had been recovered, a reasonable jury could not conclude that it would have been unreasonable for her to rely on the NYPD's decision to arrest Howard on narcotics charges as a lawful basis for the strip search. *See Chayo v. Kaladjian*, 844 F.Supp. 163, 170 (S.D.N.Y. 1994) (granting summary judgment on qualified immunity grounds to police officers who removed plaintiffs' children in reasonable reliance on social worker's reports); *see generally Robison v. Via*, 821 F.2d 913, 921 (2d Cir.1987).

However, the issue is less clear with respect to Sameerah. At the time of the raid, Sameerah stated that she was twelve years of age. While S/A Wight claims that she was not informed of this fact, S/A Wight was aware that Sameerah was of "school age" and that Sameerah's visiting friend was also a minor. *See* Wight Dep. at p. 65. Moreover, it is undisputed that Sameerah, unlike her mother, was not formally placed under arrest before the strip search, and that Sameerah was not named in the search warrant. A reasonable jury could therefore conclude that it was objectively unreasonable for S/A Wight to believe that a strip search of Sameerah was justified. Accordingly, S/A Wight is entitled to qualified immunity with respect to the strip search of Howard but not with respect to the strip search of Sameerah.

## CONCLUSION

For the reasons set forth above, the City Defendants' summary judgment motion is granted as to Count Six but denied as to all other claims. S/A Wight's summary judgment motion is denied as to the strip search claim brought by Sameerah (Count Two), but granted as to all other claims against her. Discovery should proceed forthwith. A pretrial conference is scheduled for October 16, 1995 at 4:30 p.m.

So Ordered.