Kenneth S. CAMERON,
Plaintiff-Appellant,

v.

Matthew FOGARTY and John Halbig,
Defendants-Appellees.

No. 85–2297.

United States Court of Appeals,
Second Circuit.

Argued Jan. 29, 1986.

Decided Dec. 1, 1986.

States District Court for the Eastern District of New York, Edward R. Neaher, *Judge,* dismissing his amended complaint ("complaint"), brought under 42 U.S.C. § 1983 (1982), seeking damages from defendants on the ground that they had arrested him without probable cause, in violation of his federal constitutional rights. The district court granted defendants' motion for summary judgment dismissing the complaint, ruling that New York law bars a civil action for arrest without probable cause if the claimant has been convicted of the crime for which he was arrested. On appeal, Cameron argues that New York law should not have been applied, since its application frustrates the purpose of § 1983. Defendants urge that we affirm the dismissal, either on the ground adopted by the district court or on the ground that the claim was barred by principles of collateral estoppel. We conclude that although principles of collateral estoppel do not apply, the judgment should be affirmed because common-law principles incorporated in § 1983 bar the present suit.

## I.  BACKGROUND

Insofar as it is pertinent to Cameron's claim of false arrest and the propriety of the district court's dismissal of the complaint, the trial record in state court reveals the following events and proceedings.

### A.  *The Events*

On February 13, 1980, New York City Police Officers Fogarty and Halbig observed Cameron, driving a car with Illinois license plates and a broken left rear vent window, make an illegal right turn through a red light on 111th Street in Manhattan and park illegally at a bus stop on Eighth Avenue. Cameron and his passenger, Anthony Wilson, left the car and began to walk away from it. Because of the illegal right turn and because the broken vent window caused them to suspect that the car might have been stolen, the officers pulled alongside the car and hailed Cameron, identifying themselves as police officers.

Steven R. Popofsky, New York City (Diana Hassel, Paul, Weiss, Rifkind, Wharton & Garrison, New York City, on brief), for plaintiff-appellant.

Elizabeth Dvorkin, New York City (Frederick A.O. Schwarz, Jr., Corporation Counsel of the City of New York, June A. Witterschein, New York City, on brief), for defendants-appellees.

Before NEWMAN, KEARSE and MINER, Circuit Judges.

KEARSE, Circuit Judge:

Plaintiff Kenneth S. Cameron, who was convicted in 1980 in New York State Supreme Court of possession of stolen property following his arrest by defendant police officers Matthew Fogarty and John Halbig, appeals from a judgment of the United

When asked for identification of himself and his vehicle, Cameron produced a Virginia driver's license bearing his photograph and the name Sammy Davis, Jr., and a carbon copy of a Hertz Corporation ("Hertz") car rental agreement made out to Jenne M. Currie, whom Cameron identified as his aunt. The agreement indicated that the car was to have been returned to Hertz on February 3. Cameron told the officers that the car window had been broken recently, that he had reported it to Hertz at Newark Airport, and that he had there been added to the rental agreement as a driver. The copy of the rental agreement bore handwritten notations in ink that Sammy Davis, Jr., was an authorized additional driver and that an accident report had been filed at Newark Airport.

In the minute or two between noticing Cameron's car and stopping alongside it, the officers had radioed police headquarters for information as to whether the car had been reported stolen, but had received no response. After questioning Cameron they remained suspicious because of the broken window, the notations inked in on the rental agreement, and the apparent overdue return of the car, and they decided to go to the police station to investigate further. Cameron and Wilson rode with Fogarty in the police car; Halbig drove the rental car.

At the station house, Cameron identified himself as Kenneth Cameron and showed Fogarty a passport in that name. He also produced an airline ticket to Barbados made out to K. Cameron, a social security card bearing the name Sammy Davis, Jr., and four state child support checks made out to Giovanni Stanislaus, who he said was his child.

Halbig telephoned Hertz to inquire about the car. Hertz employees informed both Halbig and Fogarty that the car was stolen, having been fraudulently rented at O'Hare Airport in Chicago. The employees also stated that Hertz did not authorize additional drivers in the manner indicated on Cameron's rental agreement and that no accident report had been filed.

Cameron was then placed under arrest and charged with several offenses including grand larceny, criminal impersonation, and criminal possession of stolen property.

B. *The Criminal Trial*

At trial, the state's evidence included Fogarty's testimony describing the events as set forth above. When Fogarty was asked what statements Cameron had made about the license and the rental agreement when he produced those documents on the street, Cameron's counsel requested a sidebar conference, which included the following colloquy:

> MR. DOCKRY [counsel for Cameron]: I would call to the Court's attention statements are now being proffered, statements allegedly made by the defendant.
>
> It woud [*sic*] seem I am going to run into the area of rights.
>
> I would just ask the District Attorney to clarify the rights issue and the Miranda issue.
>
> I am relatively certain it is all quite proper, but nonetheless.
>
> THE COURT: Number one, I assume that the contention is that this is not a custodial interrogation.
>
> MR. DOCKRY: At this stage.
>
> MR. BARBER [the prosecutor]: That is entirely correct.

(Tr. 184–85.) The Sammy Davis, Jr. driver's license was then introduced into evidence without objection by Cameron. The rental agreement had been received in evidence earlier, also without objection by Cameron.

The social security card, the child-support checks, and the airline ticket were received in evidence subject to Cameron's counsel's "reserv[ation of an] objection" as to those documents. The reserved objections were overruled when, during Cameron's cross-examination of Fogarty, they were renewed in the following colloquy:

> MR. DOCKRY: I hate to bother the Court with what may be a trifling matter.

You recall in a brief bench conference this mroning [*sic*], in the course of the officer's testimony who is about to resume the stand, I asked to make very sure that the search which was to follow at the police station and the statements then taken, and all these things, that those would be probably [*sic* —properly?] structured.

The Court permitted me to wait until it became more timely.

Thereafter when these things were introduced into evidence I took objection and I also asked the Court to give me permission to renew an objection on a later date after cross examination.

But at this point it must be clear that the items that were introduced have not been properly foundationed with respect to the propriety of such a thing as admissible evidence in this case.

I would therefore ask—

THE COURT: Based on the evidence I heard from this officer, the specific exhibits, driver's license, airline ticket, other property were the incidents of a lawful arrest.

Under the circumstances they were properly admissible.

There were no pretrial motions to suppress. I don't know what the basis would have been in making one, under the circumstances of this case.

It is clear, after the defendant had been arrested, I assume he was searched, and those properties were the consequence of an arrest.

MR. DOCKRY: Thank you, sir. Now I am ready to proceed.

(Tr. 214–16.)

Cameron was convicted of first degree criminal possession of stolen property, in violation of N.Y. Penal Law § 165.50 (McKinney 1975). He appealed the conviction, but did not challenge the admissibility of any evidence against him. His conviction was affirmed without opinion. *People v. Cameron*, 86 A.D.2d 783, 448 N.Y.S.2d 340 (1st Dept), *leave to appeal denied*, 56 N.Y.2d 595, 450 N.Y.S.2d 1029, 435 N.E.2d 1102 (1982).

## C. *The Present Amended Complaint*

In February 1982, Cameron commenced the present action *pro se*, alleging that the defendants had arrested him in violation of his constitutional rights and seeking damages under 42 U.S.C. § 1983. The district court's early dismissal of the action was reversed by this Court as premature, *Cameron v. Fogarty*, 705 F.2d 676 (2d Cir.1983), and on remand, counsel was assigned and filed the complaint that is the focus of this appeal. Cameron alleged that his arrest took place on Eighth Avenue when he was required to accompany the officers to the police station, and that the arrest violated his constitutional rights because at that time the officers lacked probable cause to believe that a crime had occurred or that he had committed it and lacked any good faith belief that probable cause existed for his arrest.

Defendants answered and moved for summary judgment on the ground that the state court's ruling that the evidence was admissible at Cameron's criminal trial because it had been obtained in a search incident to a lawful arrest necessarily included a finding that there had been probable cause to make the arrest, and that Cameron's claim was therefore barred by principles of collateral estoppel.

In a Memorandum Order dated August 19, 1985 ("Decision"), the district court granted defendants' motion for summary judgment on the ground that, even if the issue of probable cause to arrest had not been raised and rejected at the criminal trial, under New York common law Cameron's conviction barred his subsequent civil suit for arrest without probable cause. Reasoning that a claim under New York law for false arrest or false imprisonment would be barred by a conviction of the offense for which the arrest or imprisonment occurred, Decision at 6 (citing *Broughton v. State*, 37 N.Y.2d 451, 458, 373 N.Y.S.2d 87, 95, 335 N.E.2d 310, 315, *cert. denied*, 423 U.S. 929, 96 S.Ct. 277, 46 L.Ed.2d 257 (1975)), and that a § 1983 claim alleging an arrest without probable cause

is similar to a state law claim for false arrest, Decision at 6 (citing *Raysor v. Port Authority*, 768 F.2d 34 (2d Cir.1985), *cert. denied*, — U.S. —, 106 S.Ct. 1227, 89 L.Ed.2d 337 (1986)), the court concluded that

> [g]iven the similarities in the state and federal claims here, logic would dictate that plaintiff's state conviction would also bar a federal claim asserting the absence of probable cause to arrest....
>
> ....
>
> ... Although the court's ruling that plaintiff's conviction bars the instant suit is not based upon collateral estoppel per se, *see Pouncey v. Ryan*, 396 F.Supp. 126, 128 n. 2 (D.Conn.1975), " * * * the preclusion mandated for state court judgments by section 1738 is not expressly restricted to that achieved under the '*res judicata*' or 'collateral estoppel' labels; * * *." *Brown v. Edwards*, 721 F.2d 1442, 1449 n. 8 (5th Cir.1984) (emphasis in original). Thus, although a finding of probable cause to arrest was not necessary to sustain plaintiff's conviction, *see United States v. Crews*, 445 U.S. 463, 474, 100 S.Ct. 1244, 1251–52, 63 L.Ed.2d 537 (1980), under the law of New York, that conviction, sustained on appeal, necessarily includes a finding that there was probable cause to arrest and thereby bars a subsequent civil suit challenging the existence of probable cause for the arrest.

Decision at 7–8.

Accordingly, the court dismissed the complaint. This appeal followed.

## II. DISCUSSION

On appeal, defendants urge us to uphold the dismissal of the action either on the ground of collateral estoppel or on the state-law-bar ground adopted by the district court. Cameron argues that the conditions for application of principles of collateral estoppel are not met and that the state-law-bar ground is contrary to federal policy. We agree with Cameron that litigation of the issue raised here as to probable cause is not barred by principles of collateral estoppel, but we conclude that under common-law principles, as properly incorporated into § 1983 actions of this type, Cameron's present lawsuit is defeated by his prior conviction.

### A. *Collateral Estoppel*

Section 1738 of 28 U.S.C., known as the "full faith and credit statute," provides, in pertinent part, as follows:

> The records and judicial proceedings of any court of any ... State [of the United States] ... shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such State....

28 U.S.C. § 1738 (1982). This section requires that a federal court give effect to at least the res judicata and collateral estoppel rules of the state when a state-court judgment is in question. *See Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 105 S.Ct. 1327, 1331–33, 84 L.Ed.2d 274 (1985). The state-court judgment must be given "the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered," *Migra v. Warren City School District Board of Education*, 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984), whether that preclusive effect stems from the actual litigation and resolution of the issue in a prior state court proceeding, *Haring v. Prosise*, 462 U.S. 306, 313–16, 103 S.Ct. 2368, 2373–74, 76 L.Ed.2d 595 (1983); *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 481–83, 102 S.Ct. 1883, 1897–99, 72 L.Ed.2d 262 (1982); *Allen v. McCurry*, 449 U.S. 90, 97–99, 101, 101 S.Ct. 411, 416–17, 418, 66 L.Ed.2d 308 (1980), or from the fact that the issue could have been litigated in the state court proceeding, *Migra v. Warren County School District Board of Education*, 465 U.S. at 83–85, 104 S.Ct. at 897–99.

Under New York law, a party is collaterally estopped from relitigating an issue in a second proceeding if (1) "the issue as to which preclusion is sought [is] identical with the issue decided in the prior

proceeding," (2) "the issue [was] necessarily decided in the prior proceeding," and (3) "the litigant who will be held precluded in the present proceeding ... had a full and fair opportunity to litigate the issue in the prior proceeding." *Capital Telephone Co. v. Pattersonville Telephone Co.*, 56 N.Y.2d 11, 17, 451 N.Y.S.2d 11, 13, 436 N.E.2d 461, 463 (1982). Defendants argue that the issue of probable cause for Cameron's arrest was decided at his criminal trial because the trial court ruled that various pieces of evidence were admissible because they were seized as incident to a lawful arrest. Since the arrest was made without a warrant and hence was not lawful unless there was probable cause, *see, e.g., Dunaway v. New York*, 442 U.S. 200, 208 & n. 9, 99 S.Ct. 2248, 2254 & n. 9, 60 L.Ed.2d 824 (1979), they argue that the trial court decided there had been probable cause for the arrest. We conclude that the issue decided at the criminal trial is not the issue presented here.

The testimony at trial revealed that some of the documentary evidence introduced against Cameron had been taken from him on the street, and some had been taken later. The Sammy Davis, Jr. driver's license and the rental agreement were produced by Cameron when he was accosted by the officers on the street. These two documents were received in evidence without objection from Cameron. Cameron did not argue at the criminal trial, as he does in the present action, that his arrest occurred on Eighth Avenue. At the trial, Fogarty testified that Cameron was placed under arrest at the station house after the officers had received the information from Hertz indicating that the car had been stolen, and Cameron took no issue with Fogarty's characterization of when the arrest occurred, apparently embracing the view that the circumstances on the street were "not ... custodial." (Tr. 185.)

In contrast, the social security card in the name Sammy Davis, Jr., the airline ticket for K. Cameron, and the state child support checks for Giovanni Stanislaus were not produced by Cameron until after he and the officers arrived at the station house. Cameron objected to the introduction of "these things," focusing on "the search ... at the police station." (Tr. 215.) As we read the trial record, therefore, the trial court was never called upon to determine either the moment at which the arrest occurred or whether an arrest of Cameron on Eighth Avenue was made with or without probable cause. Give the apparently undisputed trial testimony that Cameron was not placed under arrest until after he arrived at the station house, and the fact that Cameron objected only with respect to the documents seized at the police station, the trial court's ruling that the documents were the incidents of a lawful arrest cannot reasonably be construed as a ruling that Cameron was lawfully arrested on Eighth Avenue.

It is true that in overruling the objections the trial court included the driver's license, which had been taken from Cameron on the street, in its listing of the items that were seized incident to a lawful arrest. However, given the facts that no objection had been made to the introduction of the license and that the court had earlier assumed and been reassured by the parties that the street confrontation was not custodial, we conclude that the court's mention of the license simply reflects a lapse of memory as to what counsel's phrase "these things" encompassed, rather than any intent to rule that the arrest had occurred on the street or that probable cause existed for Cameron's arrest on the street.

Accordingly, we conclude that the issue raised in the present lawsuit, *i.e.*, the existence of probable cause to arrest Cameron on Eighth Avenue, was neither decided by the court at the criminal trial nor necessary to its ruling that the documents to which Cameron's objection was addressed had been seized in connection with an arrest made on probable cause. Thus, litigation in the present lawsuit of the existence of probable cause to arrest Cameron on Eighth Avenue is not barred by principles of collateral estoppel.

## B. *The Common-Law Defense*

■ The district court dismissed Cameron's complaint on the basis that even if New York principles of collateral estoppel did not warrant the dismissal of the complaint, § 1738 required it to apply that aspect of New York law that would give preclusive effect to the judgment of conviction in any subsequent civil challenge to the legality of the arrest. While there are dicta supporting the view that the reach of § 1738 is not limited to principles of res judicata and collateral estoppel, *see, e.g., Allen v. McCurry*, 449 U.S. at 96, 101 S.Ct. at 415–16 ("Congress has specifically required all federal courts to give preclusive effect to state-court judgments *whenever* the courts of the State from which the judgments emerged would do so") (emphasis added), we need not reach the question of whether § 1738 requires the recognition of state-law preclusionary rules other than res judicata and collateral estoppel in order to decide the present case, for we conclude that Cameron's complaint was properly dismissed because under long-established common-law principles, Cameron's conviction gives the defendant police officers a complete defense to the present claim.

In determining whether an asserted defense is available to defeat liability in an action brought under § 1983, the courts have generally been guided in large part by whether the defense was available at common law. In *Pierson v. Ray*, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967), for example, the Supreme Court, stating that "§ 1983 'should be read against the background of tort liability that makes a man responsible for the natural consequences of his actions,'" *id.* at 556, 87 S.Ct. at 1219 (quoting *Monroe v. Pape*, 365 U.S. 167, 187, 81 S.Ct. 473, 484, 5 L.Ed.2d 492 (1961)), reviewed traditional principles with respect to the immunity of judges and law enforcement officials from suits for damages resulting from arrests, noted that the legislative history of § 1983 gave no clear indication that Congress intended any wholesale abolition of common-law immunities that might bar suits under that section, and concluded that those common-law defenses

were available. *Id.* at 553–56, 87 S.Ct. at 1217–19. Similar analyses were made in, *e.g., City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 258–68, 101 S.Ct. 2748, 2755–60, 69 L.Ed.2d 616 (1981) (immunity of municipal corporation from punitive damages); *Procunier v. Navarette*, 434 U.S. 555, 561–63, 98 S.Ct. 855, 859–60, 55 L.Ed.2d 24 (1978) (immunity of prison officials for good faith actions); *Imbler v. Pachtman*, 424 U.S. 409, 431, 96 S.Ct. 984, 995–96, 47 L.Ed.2d 128 (1976) (immunity of prosecutors in initiating or prosecuting the state's case); and *Scheuer v. Rhodes*, 416 U.S. 232, 247–48, 94 S.Ct. 1683, 1692, 40 L.Ed.2d 90 (1974) (immunity of state executive officials for discretionary acts). Thus, in *Owen v. City of Independence*, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980), the Supreme Court cited many of these cases and others, and noted that

> [i]n each of these cases, our finding of § 1983 immunity "was predicated upon a considered inquiry into the immunity historically accorded the relevant official at common law and the interests behind it." *Imbler v. Pachtman, supra,* [424 U.S.] at 421 [96 S.Ct. at 990]. Where the immunity claimed by the defendant was well established at common law at the time § 1983 was enacted, and where its rationale was compatible with the purposes of the Civil Rights Act, we have construed the statute to incorporate that immunity.

*Id.* at 638, 100 S.Ct. at 1409.

Our review of common-law principles with respect to arrest reveals that an action for arrest without probable cause, sometimes colloquially called an action for "false arrest," would be analyzed as a claim either for false imprisonment or for malicious prosecution. *See, e.g., Broughton v. State*, 37 N.Y.2d at 457–58, 373 N.Y.S.2d at 94, 335 N.E.2d at 314–15; 1 Harper & James, *The Law of Torts* § 4.11, at 337–39 (1965) ("Harper & James"). Though the elements of these two traditional torts differ, *see, e.g., Broughton v. State*, 37 N.Y.2d at 456–57, 373 N.Y.S.2d at 93–94, 335 N.E.2d at 313–15; Harper &

James § 3.18 (false imprisonment); *id.* §§ 4.1–4.6 (malicious prosecution); Restatement (Second) of Torts §§ 35, 653 (1965 & 1977) ("Restatement"), there is substantial overlap. Civil liability for false imprisonment following an arrest is governed by many of the same principles that govern a claim of malicious prosecution, *see* Restatement § 37, comment *b; see also* Harper & James § 4.11; *id.* § 4.12, and, as discussed below, it is clear that with respect to either claim, a person who has been convicted of the crime for which he was arrested is barred from recovering.

In an action for malicious prosecution, in which the plaintiff must show the absence of probable cause to arrest, *see* Restatement § 653; *Broughton v. State*, 37 N.Y.2d at 457, 373 N.Y.S.2d at 94, 335 N.E.2d at 314–15; Harper & James § 4.5, at 311, he must also show, *inter alia,* that the proceedings previously commenced against him terminated in his favor, *see, e.g., Broughton v. State*, 37 N.Y.2d at 457, 373 N.Y.S.2d at 94, 335 N.E.2d at 314–15; *Singleton v. City of New York*, 632 F.2d 185, 195 (2d Cir.1980), *cert. denied*, 450 U.S. 920, 101 S.Ct. 1368, 67 L.Ed.2d 347 (1981); Harper & James § 4.4, at 307. Thus, "[t]he fact that the person against whom criminal proceedings are instituted is guilty of the crime charged against him, is a complete defense against liability for malicious prosecution." Restatement § 657; *see generally* Annot., "Unreversed Conviction as Conclusive in Action for Malicious Prosecution," 69 A.L.R. 1062 (1930) (citing cases dating back to 1793); *see also* Annot., "Conclusiveness, as Evidence of Probable Cause in Malicious Prosecution Action, of Conviction as Affected by the Fact that it Was Reversed or Set Aside," 86 A.L.R.2d 1090 (1962).

In an action for false imprisonment, the plaintiff need not show that the prior proceedings against him terminated in his favor, but the defendant is entitled to prevail if he can establish that there was probable cause for the arrest, *see Broughton v. State*, 37 N.Y.2d at 458, 373 N.Y.S.2d at 95, 335 N.E.2d at 315; Restatement § 37, comment *b; id.* § 653, and a conviction of the plaintiff following the arrest is viewed as establishing the existence of probable cause. *See Broughton v. State*, 37 N.Y.2d at 458, 373 N.Y.S.2d at 95, 335 N.E. at 315 ("a conviction which survives appeal would be conclusive evidence of probable cause"); *Menard v. Mitchell*, 430 F.2d 486, 491 n. 26 (D.C.Cir.1970) ("even if no probable cause existed at the time of arrest, . . . . a suit for false arrest may not normally be maintained if the arrest was followed by conviction, regardless of the validity of the arrest at the time it was made"); *Pouncey v. Ryan*, 396 F.Supp. 126, 127 (D.Conn.1975) (Newman, J.) (in neither an action for "false arrest" nor an action for "false imprisonment . . . is a plaintiff permitted to challenge probable cause in the face of a valid judgment of conviction"); Restatement § 667(1) ("conviction of the accused . . . conclusively establishes the existence of probable cause, unless the conviction was obtained by fraud, perjury or other corrupt means"); *see id.* § 37, comment *b; id.* § 653.

Thus, the common-law rule, equally applicable to actions asserting false arrest, false imprisonment, or malicious prosecution, was and is that the plaintiff can under no circumstances recover if he was convicted of the offense for which he was arrested. *Broughton v. State*, 37 N.Y.2d at 458, 373 N.Y.S.2d at 95, 335 N.E.2d at 315; Harper & James § 4.11, at 345; *id.* § 4.12, at 346. This rule "represents the compromise between two conflicting interests of the highest order—the interest in personal liberty and the interest in apprehension of criminals," *id.* § 3.18, at 275, and constitutes a refusal as a matter of principle to permit any inference that the arrest of a person thereafter adjudged guilty had no reasonable basis. The law enforcement officer is given this protection because he "has a duty to the public to prevent crime and arrest criminals; the performance of these duties would be seriously impaired unless peace officers were given considerable discretion in their performance and protected from liability for the consequences

of honest and reasonable mistakes." Restatement § 121, comment *g*.

The parties have given us no basis for inferring that Congress intended that § 1983 not incorporate the common-law rule, and our own efforts have turned up no such evidence. We note the Supreme Court's "assumption ... that members of the 42d Congress were familiar with common-law principles, including defenses previously recognized in ordinary tort litigation, and that they likely intended these common-law principles to obtain, absent specific provisions to the contrary," *City of Newport v. Fact Concerts, Inc.*, 453 U.S. at 258, 101 S.Ct. at 2755, and we see no reason to believe Congress intended that the common-law defense of conviction not be equally applicable to § 1983 claims for arrest without probable cause.

Where the civil rights plaintiff has been convicted of the offense for which he was arrested, we have in effect accepted the fact of that conviction as conclusive evidence of the good faith and reasonableness of the officer's belief in the lawfulness of the arrest. *See, e.g., Singleton v. City of New York*, 632 F.2d at 195 ("common law rule that termination of the earlier proceedings in favor of the accused is an essential element of a malicious prosecution claim has generally been adopted and applied by federal courts" in actions under § 1983). Thus, in *Pouncey v. Ryan*, 396 F.Supp. at 127, the court summarily dismissed a § 1983 action based on an arrest without probable cause, concluding that the common-law principle barring post-conviction suits for false arrest and false imprisonment was applicable to this type of action under § 1983.

The availability of this defense in constitutional litigation does not undermine the goals of § 1983. Provision for the right to bring suit under § 1983 is designed both to allow an injured person to obtain compensation for the loss of his civil rights and to deter public officials from further violation of such rights. *E.g., Owen v. City of Independence*, 445 U.S. at 651, 100 S.Ct. at 1415–16; *Carey v. Piphus*, 435 U.S. 247,

254–57, 98 S.Ct. 1042, 1047–49, 55 L.Ed.2d 252 (1978). Neither interest is more than minimally implicated where the person arrested was convicted. The fact of conviction means that the plaintiff was not entitled to escape arrest entirely and that the arrest was simply premature. Though the right to be free from arrest without probable cause is substantial, the injury caused solely by prematurity of arrest is, of itself, insubstantial. It is of course possible that, incident to the premature arrest, the officers will have seized evidence that incriminates the person arrested, and that this could result in more than negligible injury. But the law seeks to forestall the possibility of real injury by forbidding the use of any such evidence against the accused at his criminal trial. *See, e.g., Florida v. Royer*, 460 U.S. 491, 507–08, 103 S.Ct. 1319, 1329–30, 75 L.Ed.2d 229 (1983); *Brown v. Illinois*, 422 U.S. 590, 599, 95 S.Ct. 2254, 2259–60, 45 L.Ed.2d 416 (1975). Thus, the exclusionary rule minimizes the injury resulting from an unlawful arrest.

The exclusionary rule also lessens the need for § 1983 actions as a deterrent to the making of arrests on less than probable cause. The primary goal of law enforcement officers is to see to it that persons who have committed crimes are punished for those crimes, and we think officers seek to avoid making flawed arrests in order to avoid the exclusion of evidence that could lead to conviction. We are thus persuaded that the incremental deterrence value of imposing on the officer liability for the minimal amount of damages likely recoverable by the person convicted after an unlawful arrest would be small.

■ In sum, we conclude that the proper accommodation between the individual's interest in preventing unwarranted intrusions into his liberty and society's interest in encouraging the apprehension of criminals requires that § 1983 doctrine be deemed, in the absence of any indication that Congress intended otherwise, to incorporate the common-law principle that, where law enforcement officers have made an arrest, the resulting conviction is a de-

fense to a § 1983 action asserting that the arrest was made without probable cause.

Application of this principle to the present action makes it plain that the dismissal of the complaint was proper. Cameron concedes, as he must, that he was convicted of criminal possession of stolen property, the offense for which he was arrested. The conviction was affirmed on appeal, and there has been no suggestion that it was in any way procured by fraud or perjury. Whether or not the facts surrounding the officers' encounter with Cameron on Eighth Avenue amounted to probable cause for his arrest, the conviction of Cameron of the offense for which he was arrested gives the officers a complete defense to the present suit.

## CONCLUSION

For the foregoing reasons, the judgment dismissing the complaint is affirmed.