David TUCKER, Plaintiff,

v.

P.O. Harold GROSS, Shield No. 118, P.O. Colgan, Shield No. 137, P.O. Pannaman, Shield No. 145, and P.O. Kuebler, Defendants.

No. CV 96–1098(ADS).

United States District Court, E.D. New York.

March 11, 1999.

David Tucker, Rockville Center, NY, plaintiff pro se.

Montfort, Healy, McGuire & Salley, Garden City, NY by James M. Murphy, for the Police Officer, defendants.

### MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

The pro se plaintiff, David C. Tucker ("Tucker" or the "plaintiff"), initiated two lawsuits, consolidated under Docket Number 96 CV 1098, pursuant to 42 U.S.C. § 1983. In a prior decision, the Court observed that is difficult to discern the grounds for the two lawsuits, which are set forth in nearly verbatim complaints. It appears that Tucker is contending that his constitutional rights were violated because the defendant Police Officers Gross, Colgan, Pannaman and Kuebler ("the police officer defendants" or "the defendants") made "false statements," arrested him without a warrant, and charged him with more serious crimes than were justified by his conduct. The Court previously granted the motion of the Legal Aid Society defendants to dismiss the complaint against them pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. At issue are cross-motions for summary judgment by the police officer defendants and the plaintiff.

## I. BACKGROUND

The following facts are derived from the pleadings, state court transcripts, and moving papers. Except where indicated otherwise, they are not in dispute.

According to an indictment handed down by the Grand Jury of Nassau County on April 18, 1996, a copy of which is annexed to Tucker's moving papers, on October 20, 1995, Nassau County District Court Judge Joseph Covello issued an Order of Protection on behalf of a woman named Juanita Santana and against Tucker.

As revealed in the police reports annexed to the plaintiff's moving papers, on four separate dates in 1995—November 12, 1995, December 12, 1995, December 24, 1995 and December 25, 1995—Santana provided police with supporting depositions alleging that Tucker had violated the order of protection by various means, including by forcibly pushing his way into her home without her permission and damaging her phone once inside. In each deposition, Santana requested that the police arrest Tucker.

Based on her complaints, the Nassau County police arrested Tucker on December 25, 1995 on charges of Burglary in the Second Degree (New York Penal Law § 140.25) and Criminal Contempt in the Second Degree (New York Penal Law § 215.50). The Grand Jury of Nassau County subsequently indicted Tucker on thirteen charges involving Santana and/or the violations of the Order of Protection, including: (1) Criminal Contempt in the Second Degree, relating to a December 10, 1995 incident; (2) Criminal Contempt in the Second Degree, relating to a December 12, 1995 incident; (3) Criminal Contempt in the Second Degree, relating to a December 24, 1995 incident; (4) Burglary in the Second Degree, relating to a December 25, 1995 incident; (5) Criminal Mischief in the Fourth Degree, relating to a December 25, 1995 incident; (6) Criminal Contempt in the Second Degree, relating to a December 25, 1995 incident; (7) Criminal Contempt in the Second Degree, relat-

ing to a January 31, 1996 incident; (8) Criminal Contempt in the Second Degree, relating to a February 14, 1996 incident; (9) Criminal Contempt in the Second Degree, relating to a February 21, 1996 incident; (10) Criminal Contempt in the Second Degree, relating to a February 26, 1996 incident; (11) Criminal Contempt in the Second Degree, relating to a March 5, 1996 incident; (12) Criminal Contempt in the Second Degree, relating to a April 2, 1996 incident; and (13) Harassment in the First Degree, relating to an incident on November 15, 1995. Tucker does not explain in his papers how the particular police officers named as defendants in this case are connected to his arrest and prosecution, but the Court assumes, for the purpose of this decision, that they had some part in his apprehension and prosecution.

### A. The Plea

As evidenced by the state court transcript, on December 23, 1996, Tucker appeared before Nassau County Court Judge Jack Mackston, withdrew his original plea of not guilty pursuant to a plea agreement, and entered a plea of guilty to three misdemeanor charges in full satisfaction of the indictment: Criminal Mischief in the Fourth Degree, and two counts of Criminal Contempt in the Second Degree. With regard to the charge of criminal mischief, in response to Judge Mackston's questioning, Tucker admitted during the plea allocution that "On December 25 of 1995, [he was] inside an apartment located at 135 Terrace Avenue, Apartment 35B, Hempstead, Nassau County New York ... [and] on that date and ... at that time he ... intentionally damag[ed] property of a Juanita Santana namely[,] a telephone ... [by] pull[ing] the phone so that the cord came out of the wall." (Plea Minutes, at 14–15). As to the counts of Criminal Contempt in the Second Degree, Tucker admitted that on January 31, 1996 and February 14, 1996, he contacted Juanita Santana by mailing a letter to her at her residence in violation of an Order of Protection issued in her behalf on October 20, 1995 which prohibited him from contacting Santana. (Plea Minutes, at 15–17).

### B. The Sentence

The state court transcripts reveal that on February 7, 1997, Judge Mackston sentenced Tucker to concurrent, one year sentences of incarceration on each of the two contempt charges, to run consecutively to a one-year sentence on the criminal mischief charge. (Sentencing Minutes, at 7–8).

### C. The State Court Appeal

On April 6, 1998, the New York State Appellate Division, Second Department, affirmed Tucker's judgment of conviction, and granted his attorney's application for leave to withdraw as counsel pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). *See People v. Tucker*, 249 A.D.2d 342, 671 N.Y.S.2d 298 (2d Dept.1998).

### D. The First Complaint: Docket Number CV 96–1098(ADS)

Tucker initiated his first lawsuit on March 12, 1996, by filing a complaint which was assigned Docker Number CV 96–1098. The complaint raised claims under 42 U.S.C. § 1983 against one of his defense attorneys and the Legal Aid Society, and against Police Officers Harold Gross, Colgan and Pannaman. Tucker complains, without elaboration that the defendant police officers made "false statements" between December 10, 1995 and December 25, 1995, and that on December 25, 1995, they arrested him without a warrant and charged him with more serious crimes than were justified by his conduct. In the portion of his complaint entitled "Relief," Tucker states that he wants the Court to "Investigate the defendant[s], file the complaint in the Court, notify the parties of [the] lawsuit file[d] against them, proceed [with] the court action lawsuit, [and] pro-

tect my constitutional rights, which h[ave] been violated."

While the Court acknowledges difficulty comprehending most of the plaintiff's handwritten complaint, he indicates that he wishes to pursue claims under 42 U.S.C. § 1983 and New York State common law for "false arrest, unlawful imprisonment, mental/physical anguish and [incomprehensible] damages. [There were] violation[s] of many constitutional rights of the [plaintiff], [including] violat[ions of the] 1, 3, 4, 5, 6, 7, 8, 9[and] 10 amendments. [The] P.O. [police officers] overcharge[d][the] plaintiff [with regard to the] crime[s] committed in this case. [There also was] [i]mpeachment [committed by the] lawyer and police officers."

### E. The Second Complaint: Docket Number CV 96–2073(ADS)

By a complaint filed on April 26, 1996, Tucker initiated a second lawsuit, which was assigned Docket Number CV 96–2073. The only perceived difference between the first and second complaints is that the latter adds as a defendant Police Officer Kuebler, who, according to Tucker, was the "preparer of [an unspecified] deposition [in the State court criminal] case." In all other respects, the two complaints contain the identical allegations claims and requested relief.

### F. The Court's Consolidation Order

In a previous decision, the Court ordered that Docket Numbers CV 96–1098 and 96–2073 be consolidated for all purposes under Docket Number CV 96–1098.

### G. The Court's Dismissal Order

In a Memorandum of Decision and Order dated March 4, 1998, the Court granted the motion of the defendants Kenney and the Legal Aid Society to dismiss the complaint against them pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Accordingly, only the police officer defendants remain in the case.

### H. The Cross–Motions for Summary Judgment

As noted at the outset, the police officer defendants move for summary judgment dismissing the complaint. Citing *Cameron v. Fogarty*, 806 F.2d 380 (2d Cir.1986), the defendants argue that Tucker's plea of guilty is a defense to the claims of false arrest under Section 1983 and New York common law.

As far as the Court is able to discern, Tucker does not directly respond to the defendants' arguments. Instead, he cross-moves for summary judgment and asserts that the "charges which Mr. David C. Tucker Sr. was convicted on has nothing to do with the charges he was arrested for." As a practical matter, this theory is contradicted by Tucker's own exhibits, especially when viewed in conjunction with the plea minutes. For example, the plaintiff pleaded guilty to criminal mischief relating to an incident on December 25, 1995, when he admittedly picked up a phone belonging to Juanita Santana and pulled the phone so that the cord came out of the wall. Annexed to the plaintiff's moving papers is a copy of the supporting deposition of Juanita Santana dated December 25, 1995, witnessed by Police Officer Colgan, wherein she complained that the plaintiff pulled her phone from the wall on December 25, 1995 and requested that the police arrest him. It is thus difficult to understand how the charges of conviction have "nothing to do with the charges he was arrested for."

In addition, the plaintiff makes various allegations in his moving papers, largely incomprehensible to the Court, seemingly attacking the validity of his underlying convictions. Such allegations are not contained in either of the two complaints. For example, Tucker complains in his moving papers that he was denied his right to a speedy trial, and that his conviction for violating the order of protection by mailing a letter to Santana violated his "1st amendment of freedom of the press, which in this case is the mail."

Viewing Tucker's papers liberally and collectively, as this Court must when reviewing pro se papers, the Court views the Complaint and moving papers as an attempt to raise the following purported causes of action: (1) Section 1983/false arrest; (2) Section 1983/malicious prosecution; (3) New York common law unlawful imprisonment; and (4) Section 1983/denial of equal access to the United States mail system by virtue of the order of protection.

## II. DISCUSSION

### A. Summary Judgment: The Standard

Summary judgment is appropriate where there are no genuine disputes concerning any material facts, and where the moving party is entitled to judgment as a matter of law. *In re Blackwood Associates, L.P.*, 153 F.3d 61, 67 (2d Cir.1998) (citing Fed.R.Civ.P. 56[c]; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). In deciding a summary judgment motion, the district court must resolve all ambiguities and draw all reasonable inferences in the light most favorable to the opposing party. *Castle Rock Entertainment, Inc. v. Carol Pub. Group, Inc.*, 150 F.3d 132, 137 (2d Cir.1998) (citing *Garza v. Marine Transp. Lines, Inc.*, 861 F.2d 23, 26 (2d Cir.1988)). If there is evidence in the record as to any material fact from which an inference could be drawn in favor of the non-movant, summary judgment is unavailable. *See Holt v. KMI–Continental, Inc.*, 95 F.3d 123, 128 (2d Cir.1996), *cert. denied*, 520 U.S. 1228, 117 S.Ct. 1819, 137 L.Ed.2d 1027 (1997). The trial court's task is "carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *B.F. Goodrich v. Betkoski*, 99 F.3d 505, 522 (2d Cir.1996) (quoting *Gallo v. Prudential Residential Servs., Ltd.*

*Partnership*, 22 F.3d 1219, 1224 (2d Cir. 1994)), *cert. denied sub nom.*, *Zollo Drum Co., Inc. v. B.F. Goodrich Co.*, —— U.S. ——, 118 S.Ct. 2318, 141 L.Ed.2d 694 (1998).

Further, district courts should "construe pro se complaints liberally, applying less stringent standards than when a plaintiff is represented by counsel." *Elliott v. Bronson*, 872 F.2d 20, 21 (2d Cir.1989) (per curiam); *see also Alexandre v. Cortes*, 140 F.3d 406, 408 (2d Cir.1998).

The Court will apply these standards in assessing Tucker's complaint with regard to the four purported causes of action: (1) Section 1983/false arrest; (2) Section 1983/malicious prosecution; (3) New York common law unlawful imprisonment; and (4) Section 1983/denial of equal access to the United States mail system by virtue of the order of protection.

### B. Section § 1983/Malicious Prosecution and Section 1983/Denial of Equal Access to the United States Mail

■ "A state prisoner cannot seek damages pursuant to 42 U.S.C. § 1983 for an unconstitutional conviction or imprisonment without first demonstrating the invalidity of the conviction." *Gibson v. City of New York*, No. 96 CV 4958, 1998 WL 960303 (E.D.N.Y. Dec. 9, 1998). As the Supreme Court has stated:

[I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so

invalidated is not cognizable under § 1983.

*Heck v. Humphrey,* 512 U.S. 477, 486–87, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). Thus, a district court considering a state prisoner's Section 1983 claim must decide whether a judgment in favor of the plaintiff in a civil suit would imply the invalidity of the plaintiff's underlying criminal conviction; if it would, the complaint must be dismissed unless the conviction has already been invalidated by a state court. *Id.*

■ Here, Tucker was convicted, upon his guilty pleas, of three misdemeanor charges in full satisfaction of the indictment: Criminal Mischief in the Fourth Degree, and two counts of Criminal Contempt in the Second Degree. One of those charges, the criminal mischief count, related to conduct occurring on the date of his arrest, December 25, 1995. His conviction was affirmed on appeal to the New York State Appellate Division, Second Department. Accordingly, his claim for damages relating to convictions and sentences that have been upheld on appeal is not cognizable under Section 1983. *Heck v. Humphrey,* 512 U.S. at 487, 114 S.Ct. 2364. For this reason, the defendants' motion for summary judgment dismissing the complaint as to the Section 1983 malicious prosecution claim is granted, and the plaintiff's cross-motion for summary judgment as to this claim is denied.

■ The Court also grants summary judgment dismissing the Section 1983 claim for the alleged denial of equal access to the United States mail system by virtue of the state court order of protection, which prohibited Tucker from contacting his victim in any manner, including via the mail. Tucker was convicted, upon his guilty plea, of Criminal Contempt in the Second Degree, and he admitted that on January 31, 1996 and February 14, 1996, he contacted Juanita Santana by mailing a letter to her at her residence in violation of an Order of Protection issued in her behalf on October 20, 1995 (Plea Minutes, at 15–17). This Section 1983 claim, at its core,

seeks to "recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid" (*Heck v. Humphrey,* 512 U.S. at 487, 114 S.Ct. 2364), which is barred by his conviction. In sum, it is not cognizable under Section 1983. Therefore, the defendants' motion for summary judgment dismissing this claim is granted, and the plaintiff's cross-motion for summary judgment is denied.

### C. False Arrest under Section 1983 and New York Law

■ A Section 1983 claim for false arrest "is substantially the same as a claim for false arrest under New York law." *Weyant v. Okst,* 101 F.3d 845, 855 (2d Cir.1996) (citing *Singer v. Fulton County Sheriff,* 63 F.3d 110, 118 (2d Cir.1995), *cert. denied,* 517 U.S. 1189, 116 S.Ct. 1676, 134 L.Ed.2d 779 (1996)); *Cameron v. Fogarty,* 806 F.2d 380, 386 (2d Cir.1986), *cert. denied,* 481 U.S. 1016, 107 S.Ct. 1894, 95 L.Ed.2d 501 (1987). To maintain a cause of action for false imprisonment under either theory, a plaintiff must show that: (1) the defendant intended to confine him; (2) he was conscious of the confinement; (3) he did not consent to the confinement; and (4) the confinement was not otherwise privileged. *See Singer v. Fulton County Sheriff,* 63 F.3d at 118. Thus, under New York common law and Section 1983, a plaintiff claiming false arrest must show that the defendant intentionally confined him without his consent and without justification. *Weyant v. Okst,* 101 F.3d at 852 (citing *Broughton v. State,* 37 N.Y.2d 451, 456, 373 N.Y.S.2d 87, 93, 335 N.E.2d 310, *cert. denied,* 423 U.S. 929, 96 S.Ct. 277, 46 L.Ed.2d 257 (1975)).

■ The existence of probable cause to arrest constitutes justification and "is a complete defense to an action for false arrest," *Bernard v. United States,* 25 F.3d 98, 102 (2d Cir.1994), irrespective of whether that action is brought under state

law or under Section 1983. *Weyant v. Okst,* 101 F.3d at 852 (citing *Broughton v. State,* 37 N.Y.2d at 458, 373 N.Y.S.2d at 95, 335 N.E.2d 310 [under New York law, "[j]ustification may be established by showing that the arrest was based on probable cause"]; *Singer v. Fulton County Sheriff,* 63 F.3d at 118 ["There can be no federal civil rights claim for false arrest where the arresting officer had probable cause."]). In *Cameron,* the Second Circuit held that a plaintiffs conviction prevents his recovery on a Section 1983 claim for false arrest. 806 F.2d at 387. The Court observed that, "Where the civil rights plaintiff has been convicted of the offense for which he was arrested, we have in effect accepted the fact of that conviction as conclusive evidence of the good faith and reasonableness of the officer's belief in the lawfulness of the arrest." *Id.* at 388. The Court concluded that evidence of a conviction is a complete defense to a Section 1983 action for false arrest. *Id.* at 388–89.

Similarly, under New York law, where the plaintiff is convicted of the charges against him, that conviction "normally 'would be conclusive evidence of probable cause,'" thereby precluding a common law claim for false arrest. *Weyant v. Okst,* 101 F.3d at 855 (quoting *Broughton v. State,* 37 N.Y.2d at 458, 373 N.Y.S.2d at 95, 335 N.E.2d 310).

■ In the Court's view, under the circumstances presented here, the fact of the plaintiff's conviction upon his guilty pleas prevents him from recovering on a Section 1983 or a New York common law claim for false arrest. The facts surrounding Tucker's arrest on December 25, 1995 are not in dispute, and are largely established by the plea minutes and the exhibits which the plaintiff attached to his "Notice of Motion" for summary judgment. Significantly, Tucker supplies a copy of the supporting deposition of Juanita Santana, signed on the date of his arrest, December 25, 1995, at 6:30 a.m., and witnessed by the defendant Police Officer Colgan. In her supporting deposition, Santana complained that the plaintiff:

> Pushed his way through the door [to her home] and into the apartment and refused to leave. I went to call the police and David [Tucker] pulled the phone from the wall. This is in violation of [the] District Court Order of Protection ... which states David Tucker must stay away from me and my home as well as not harass me. I did not give David Tucker permission to do this to me and I want him arrested. I am giving this statement to P.O. Colgan, I have read it and it is the truth.

Later that day, the police arrested Tucker for the Crime of Burglary in the Second Degree relating to this incident. As revealed in the indictment attached to Tucker's Notice of motion, a Grand Jury of Nassau County subsequently indicted him, among other things, on charges of Second Degree Burglary, Criminal Mischief in the Fourth Degree and Criminal Contempt in the Second Degree relating to this December 25, 1995 incident. The plaintiff then pleaded guilty to criminal mischief relating to this December 25, 1995 incident. During his plea allocution, Tucker admitted that while he was inside Santana's home on December 25, 1995, he picked up a phone belonging to her and pulled the phone so that the cord came out of the wall, without her permission or authority. In the Court's view, the plaintiff cannot maintain a false arrest claim where the arrest was prompted by a deposition from a complaining witness who had an Order of Protection issued on her behalf, the facts as set forth in the complaining deposition were largely admitted by Tucker during his guilty plea, and his conviction of the offense was upheld on appeal.

Accordingly, the Court finds that Tucker's claims for false arrest under Section 1983 and New York common law must be dismissed. The defendants' motion for summary judgment is granted with respect to these causes of action, and the

plaintiff's cross-motion for summary judgment is denied.

### D. The Remaining Causes of Action

Finally, the plaintiff mentions in his complaint that there were "violation[s] of many constitutional rights of the [plaintiff], [including] violat[ions of the] 1, 3, 4, 5, 6, 7, 8, 9[and] 10 amendments." With the exception of the Section 1983 false arrest and malicious prosecution claims, he does not explain how these constitutional violations arose. His bald and conclusory assertion that virtually every amendment to the United States Constitution was violated, without any elaboration, fails to state any cause of action as a matter of law, and therefore, the defendants' motion for summary judgment dismissing these remaining claims is granted in its entirety.

### III. CONCLUSION

Having reviewed the parties' submissions and in view of the foregoing, it is hereby

**ORDERED,** that the plaintiff's cross-motion for summary judgment is denied in its entirety; and it is further

**ORDERED,** that the defendants' motion for summary judgment dismissing the complaint in its entirety is granted and the complaint is dismissed; and it is further

**ORDERED,** that the Clerk of the Court is directed to close this case.

**SO ORDERED.**