**Edward F. CORBETT, Plaintiff,**

v.

**Al DWYER, Parole Officer in the New York State Division of Parole, and John Waters, Sergeant in the Troy Police Department, and the City of Troy, Defendants.**

No. 1:03–CV–23 LEK/DRH.

United States District Court, N.D. New York.

Nov. 30, 2004.

---

Anthony C. Ofodile, Office of Anthony C. Ofodile, Brooklyn, NY, for Counter Defendant/Plaintiff.

Patrick T. Morphy, City of Troy, Corporation Counsel, Troy, NY, for Counter Claimants/Cross Claimants/Defendants.

Risa L. Viglucci, Office of Attorney General, Albany, NY, for Cross Defendant/Defendant.

### MEMORANDUM–DECISION AND ORDER [1]

KAHN, District Judge.

## I. Background

Plaintiff Edward Corbett ("Corbett") filed this action pursuant to 42 U.S.C. § 1983 and § 1985 against Defendants Parole Officer Al Dwyer ("Dwyer"), Troy Police Sergeant John Waters ("Waters") and the City of Troy ("Troy"). Defendants Waters and Troy filed a cross-claim against Defendant Dwyer. Currently before the Court is a motion for summary judgment by Dwyer against Plaintiff Corbett and Defendants Waters and Troy, and a motion for summary judgment by Waters against Corbett.

---

1. For printed publication in the Federal Reporter.

## II. Facts

On October 21, 1988, Corbett was convicted of Rape 1 in Rensselaer County Court and sentenced to a term of incarceration of 5–15 years. Corbett Memo. (Dkt. No. 44) at 1. In early 1997, Corbett was brought before Rensselaer County Court Judge Patrick J. McGrath by the New York State Board of Examiners of Sex Offenders ("Board") for assessment of his final risk level pursuant to § 168 of the New York State Corrections Law, the Sex Offender Registration Act ("SORA"). *Id.* at 1–2. Corbett objected to the application of the SORA to him because he committed the crime before the SORA was enacted. *Id.* at 2. On February 11, 1997, Judge McGrath stated in a letter to Malcolm Hopper of the Board that, after consulting *Doe v. Pataki,* 919 F.Supp. 691 (S.D.N.Y. 1996), he agreed with Corbett that he was unable to assess a final risk level to Corbett. McGrath Letter (Dkt. No. 40, Ex. D). However, on March 7, 1997, Board Chairperson Elizabeth M. Devane informed Judge McGrath in a letter that in *Doe v. Pataki,* 940 F.Supp. 603 (S.D.N.Y. 1996), the court subsequently held that "retroactive application of the Act's registration provisions are not violative of the Ex Post Facto Clause and that such registration [under the SORA] is constitutional." Devane Letter (Dkt. No. 29, Ex. A). Thereafter, on March 25, 1997, Judge McGrath determined Corbett's risk level to be level three, the highest level of risk. Risk Assessment (Dkt. No. 29, Ex. D).

On March 24, 1997, Corbett was conditionally released to the supervision of the New York State Division of Parole. Corbett Memo. (Dkt. No. 44) at 2. On January 12, 2000, Corbett was taken into custody and charged with nine violations of his conditions of release.[2] *Id.* Corbett's final parole revocation hearing in front of Administrative Law Judge ("ALJ") Bruce Van Dyk was on March 15, 2000.[3] Complaint (Dkt. No. 1) at ¶ 22. Corbett pled guilty to all charges, except for Charges 2 and 4, which were withdrawn pursuant to the plea agreement. *Id.* at ¶ 23. Waters agreed not to charge Corbett with failing to register under the SORA as part of the plea agreement. Corbett Memo. (Dkt. No. 44) at 3. ALJ Van Dyk concurred in the joint recommendation to hold Corbett until his maximum expiration date, which was then forwarded to the New York State Parole Board. Dwyer Memo. (Dkt. No. 29) at 4–5. Corbett was sent back to prison until March 30, 2002, the maximum expiration date of his original sentence. Corbett Memo. (Dkt. No. 38) at 5; Dwyer Memo. (Dkt. No. 29) at 5. He never took an administrative appeal from that determination. Dwyer Memo. (Dkt. No. 29) at 5.

On January 3, 2002, Corbett filed the instant complaint. Complaint (Dkt. No. 1). In it, he asserted five causes of action: (1) knowing and intentional violations of his

---

**2.** The nine charges are (1) failure to register as a sex offender with the Troy Police Department as instructed by his parole officer; (2) failure to notify the Troy Police Department of a residence change ten days prior to such move; (3) failure to participate in substance abuse counseling after admitted alcohol abuse as directed by his parole officer; (4) interference with parole officers' performance of their lawful duties that threatened the safety and well-being of others; (5) failure to relocate from residence to Joseph House, a substance abuse treatment facility, as instructed by his parole officer; (6) failure to reply truthfully to an inquiry by a parole officer by claiming that he had to work on January 7, 2000 when in fact he did not; (7)-(9) failure to abide by a 10:00 P.M. to 6:00 A.M. curfew on January 7–9, 2000. Dkt. No. 1 at ¶¶ 14–20; Dkt. No. 29 at 3–4.

**3.** Corbett waived his right to a preliminary hearing. Dkt. No. 1 at ¶ 22.

Fourth, Fifth, and Fourteenth Amendment rights, specifically the denial of due process and unreasonable seizure, by applying the SORA to him *ex post facto;* (2) malicious prosecution and conspiracy to fraudulently coerce Corbett into pleading guilty to non-existent parole offenses; (3) denial of due process by Dwyer in assessing Corbett at risk level three in violation of a court order; (4) Waters' threatening to arrest Corbett for failure to register if he did not plead guilty to the parole violations pursuant to a policy and practice of Troy, through its police department, to use its officers for illegal purposes; and (5) malicious prosecution and false imprisonment. *Id.* at 11–14. In their answer, Waters and Troy asserted a cross-claim against Dwyer, alleging that any liability on their part was the result of Dwyer's negligent and/or intentional acts. Waters/Troy Answer (Dkt. No. 22) at ¶ 33. Currently before the Court are motions for summary judgment by Waters and Dwyer against Corbett, and by Dwyer against Waters and the City of Troy.

## III. Discussion

### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56 provides that summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In applying this standard, courts must " 'resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment.' " *Brown v. Henderson,* 257 F.3d 246, 251 (2d

Cir.2001) (quoting *Cifra v. Gen. Elec. Co.,* 252 F.3d 205, 216 (2d Cir.2001)).

Once the moving party meets its initial burden by demonstrating that no material fact exists for trial, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citations omitted). The nonmovant "must come forth with evidence sufficient to allow a reasonable jury to find in her favor." *Brown,* 257 F.3d at 251 (citation omitted). Bald assertions or conjecture unsupported by evidence are insufficient to overcome a motion for summary judgment. *Carey v. Crescenzi,* 923 F.2d 18, 21 (2d Cir.1991); *W. World Ins. Co. v. Stack Oil, Inc.,* 922 F.2d 118, 121 (2d Cir.1990).

### B. SORA Registration

As a condition of his release, Corbett was required to register as a sex offender pursuant to the SORA. Corbett claims that according to the Southern District's decision in *Doe v. Pataki,* 919 F.Supp. at 694, it would be unconstitutional to require him to register as a sex offender under the SORA *ex post facto.* Complaint (Dkt. No. 1) at ¶ 9. Further, he asserts that the February 11, 1997 letter to the Board by Judge McGrath, in which the Judge questioned his ability to assess Corbett under the SORA, was a court order barring the application of the SORA to him. Corbett Memo. (Dkt. No. 38) at 8. Corbett also alleges that Dwyer unilaterally decided to assess him as a level three risk and treat him accordingly. *Id.*

■ However, as Chairperson Devane noted in her March 7, 1997 letter to Judge McGrath, the Southern District only enjoined the notification (not registration) provisions of the SORA in that case. *Doe v. Pataki,* 919 F.Supp. at 702. Subse-

quently, the Southern District held and the Second Circuit affirmed that the application of the registration provisions did not violate the Ex Post Facto Clause.[4] *Doe v. Pataki*, 120 F.3d 1263 (2d Cir.1997); *Doe v. Pataki*, 940 F.Supp. at 629. Therefore, Corbett could constitutionally be required to register as a sex offender. On March 25, 1997, Judge McGrath assessed Corbett at risk level three. Risk Assessment (Dkt. No. 29, Ex. D). Therefore, it was pursuant to a lawful order by Judge McGrath, not a decision by Dwyer, that Corbett was treated as a level three risk under the SORA.

## C. Malicious Prosecution and False Imprisonment

█ To sustain a malicious prosecution claim, a plaintiff must show "(1) the initiation or continuation of a criminal proceeding against plaintiff, (2) termination of the proceeding in plaintiff's favor, (3) the lack of probable cause for commencing the pro‑ceeding, and (4) actual malice as the motivation for defendant's actions." *Rounseville v. Zahl*, 13 F.3d 625, 628 (2d Cir. 1994). Proceedings are terminated in the plaintiff's favor "only when their final disposition is such as to indicate that the accused is not guilty." *DiBlasio v. City of New York*, 102 F.3d 654, 658 (2d Cir.1996). In this case, Corbett pled guilty to seven of the nine charges. Charges 2 and 4 were withdrawn pursuant to the plea agreement. Therefore, Corbett cannot prove that the proceedings were terminated in his favor, and thus he cannot satisfy the requirements for a malicious prosecu-

tion claim. *See, e.g., Almonte v. Florio*, 2004 WL 60306, at *7 (S.D.N.Y. Jan. 13, 2004).

█ Similarly, a claim of false imprisonment under § 1983 is barred by a plea of guilty. *See, e.g., Keyes v. City of Albany*, 594 F.Supp. 1147, 1155 (N.D.N.Y.1984) (Miner, J.). To successfully prove false imprisonment, a plaintiff must show that "(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *Singer v. Fulton County Sheriff*, 63 F.3d 110, 118 (2d Cir.1995). A claim of false imprisonment cannot be upheld if there existed probable cause to justify the confinement. *See id.; see also Cameron v. Fogarty*, 806 F.2d 380, 387 (2d Cir.1986). By pleading guilty to the charges, Corbett conceded that there was probable cause. *See Timmins v. Toto*, 91 Fed.Appx. 165, 166–67, 2004 WL 233144 (2d Cir.2004); *see also Cameron*, 806 F.2d at 387. Because the confinement was privileged, Corbett cannot sustain a claim for false imprisonment.

## D. Conspiracy and Coercion

█ Corbett alleges that Dwyer and Waters conspired to coerce Corbett into pleading guilty to the charged offenses by having Waters threaten to arrest Corbett if he did not plead guilty. Complaint (Dkt. No. 1) at ¶¶ 46, 50.[5] Corbett claims that Dwyer approached Waters to persuade Waters to attend the parole revocation

---

4. The Second Circuit in *Doe v. Pataki*, 919 F.Supp. at 702, held that both the registration and notification provisions of the SORA did not constitute punishment for the purposes of the Ex Post Facto Clause, and thus could be applied to those who committed crimes prior to the effective date of the SORA.

5. Corbett also alleges in his opposition memoranda that his attorney for the parole revocation hearing was a part of the conspiracy because he had advised him to plead guilty and had submitted the guilty plea to ALJ Van Dyk. However, as Corbett had not alleged this in his complaint, it will not be addressed by the Court.

hearing and threaten Corbett with arrest when Waters at that time had no intention of arresting him. Corbett Memo. (Dkt. No. 44) at 3. Corbett stated that Waters agreed to do so, and in fact threatened him with arrest under oath at the hearing. Corbett Memo. (Dkt. No. 38) at 5. However, a review of the parole revocation hearing transcript shows no such threat. Transcript (Dkt. No. 40, Ex. G). The only statement by Waters at the hearing was in response to a question by Corbett's attorney:

> MR. GROSS: ... Sergeant Waters, is it the agreement of yourself and the Troy Police Department that Mr. Corbett would not be charged for failing to register or notify as a sex offender?
>
> WITNESS WATERS: That's correct.

Transcript (Dkt. No. 29, Ex. E) at 4. This statement is merely an agreement by Waters not to charge Corbett for failure to register or notify as part of Corbett's plea agreement with the Division of Parole. Waters' affirmative answer to Gross' question cannot be construed as a threat against Corbett. Corbett does not allege that Waters stated or implied in any other way that he would have arrested Corbett had he not pled guilty. As this brief hearing testimony by Waters is the basis for Corbett's allegations that there was a conspiracy to coerce him and that he was actually coerced into pleading guilty to the charges, these allegations are without merit.

## IV. Conclusion

Based on the foregoing discussion, it is hereby

ORDERED, that Dwyer's motion for summary judgment is GRANTED; and it is further

ORDERED, that Waters' motion for summary judgment is GRANTED; and it is further

ORDERED, that this case be DISMISSED in its entirety; and it is further

ORDERED, that the Clerk serve a copy of this order on all parties.